417 P.2d 537

**Renee S. CUSHMAN, Allerton Cushman, and Phoenix Municipal Stadium, a corporation, Appellants,**

v.

**The NATIONAL SURETY CORPORATION OF NEW YORK, a corporation, Appellee.**

No. I CA–CIV 293.

Court of Appeals of Arizona.

Aug. 3, 1966.

**26**

---

Farringer & Raftery and William A. Holohan, by W. L. Farringer, Phoenix, for appellants.

Moore, Romley, Kaplan, Robbins & Green, by Jarril F. Kaplan, Phoenix, for appellee.

KRUCKER, Chief Judge.

This is an appeal from a judgment against the appellants, plaintiffs below, in an action in which they sought to recover for the loss in value of collateral furnished to the appellee surety company, and for additional damages for the alleged wrongful withholding of such collateral from the appellants. The facts in the case were stipulated to between the parties and the issue tried to the court sitting without a jury.

Prior to December 27, 1954, a shareholders' class or representative action was commenced in the Superior Court of Maricopa County by one "Henry Goodman, and all stockholders similarly situated" against the Cushmans and Phoenix Municipal Stadium, an Arizona corporation. In connection with this action the appellants, as principals, and the appellee National Surety Corporation, as surety, executed and filed a bond in this action pursuant to a court order. As part of the consideration for the execution of this bond, the appellants deposited with the appellee, National Surety Corporation, the sum of $34,000.00, pursuant to a Collateral Security Receipt and Agreement entered into between the parties. A cashiers check in this amount payable to appellee was deposited in accordance with this agreement.

Thereafter, the appellants requested the appellee to purchase United States Treasury Bonds in lieu of the cash security held, and on April 3, 1956, seven United States Treasury Bonds, having a face value of $34,000.00, were purchased for the sum of $33,645.76.

On June 25, 1958, pursuant to a motion made by the appellants as defendants in the shareholders' action, the court entered an order, over the shareholders' objection, substituting a real property bond in the amount of $34,000.00 in place of the surety bond and exonerating the surety bond posted by the appellee. The order further provided "that the National Surety Corporation be, and it is hereby released from liabilities and obligations under the aforedescribed Surety Bond." A copy of this order was transmitted to the appellee on July 2, 1958, together with a request that the U. S. Treasury Bonds and remaining cash be immediately released to the appellants. The market value of the bonds on July 2, 1958, which amount has been stipulated to, was $32,385.00.

Thereafter, the appellants made repeated demands and requests for the return of the bonds, accrued interest and cash in the appellee's possession, but no request was ever made for the appellee to sell the U. S. Treasury Bonds. The appellee refused to return the collateral on grounds that there had been no final legal determination of the shareholders' suit which would discharge it from all liability under the surety bond.

On December 11, 1958, the shareholders' action was dismissed by the court pursuant to a motion made by the appellants and the surety bond was again exonerated. A copy of this judgment together with another demand for the return of the collateral was transmitted to National Surety Corporation. The letter containing this demand, dated February 19, 1959, stated in part:

"The Appeal period for Mr. Goodman, the plaintiff in the action involving the bond expired on the 11th day of February, 1959. As of that date he had failed to post with the Superior Court, Marico-

pa County, Arizona, a supersedeas bond in the amount of $34,000.00 which would have been necessary if he desired to challenge the court's action as far as releasing a bond posted by the National Surety Corporation."

In fact, however, notice of appeal to the Supreme Court of Arizona was filed, together with the necessary appeal bond.

The United States Treasury Bonds, accrued interest and cash were returned to the appellants on April 1, 1959, at which time the value of the bonds had decreased to $29,580.00.

On the basis of these facts the appellants filed suit alleging that the appellee had the duty of returning the bonds upon the court's order substituting the real property bond for the surety bond and exonerating the appellee from all liability thereon, such order being issued on June 25, 1958. The appellants further alleged that by the wrongful withholding of the bonds, actual damages were sustained in the amount of $3,400.00, as well as other substantial damage, as a direct and proximate result of the appellee's gross negligence in its failure to promptly and within a reasonable period of time return the security.

█ "The liability of a surety is measured by his contract, and, whether he is a gratuitous or compensated surety, while he is liable to the full extent thereof, such liability is strictly limited to that assumed by its terms, * * * and the surety has the right to stand on the strict, or precise, or the very terms of his contract, and to rely on the strict letter thereof." 72 C.J.S. Principal and Surety § 91 (1951), pages 569–572. The Collateral Security Receipt and Agreement entered into between the parties hereto provides in part:

"Surety shall not be liable for any loss or depreciation of the collateral security or the proceeds thereof, or damage thereto, unless caused by *gross negligence* of Surety's officers or employees.

\* \* \* \* \* \*

"Upon receipt of written evidence *satisfactory to Surety of its discharge from all liability under such bonds,* and of ownership of the collateral security by the applicant (it being recognized that differences of opinion with regard to proof of ownership and of termination of liability, require the giving of considerable latitude to Surety in the determination of what evidence is reasonable), \* \* \*. Surety shall, *within a reasonable time,* return said collateral security \* \* \*." (Emphasis supplied.)

█ "Such agreements must be construed to give effect to the intent of the parties and to accomplish the purposes in view, and all the attendant circumstances must be considered. They are to be construed so as to impose on the surety the obligation of acting in good faith and in the exercise of a reasonable discretion, and so as to give due effect to each and every part thereof, according to the intention of the parties at the time; and, where the operative words of the agreement are clear and unambiguous, they cannot be controlled by an erroneous recital." 72 C.J.S. Principal and Surety § 315 (1951), pages 775–776. "A surety is under no obligation to return security placed in his hands by the principal until he is discharged from liability to the obligee, or until the provisions of a contract governing the conditions under which return is to be made have been complied with." 72 C.J.S. Principal and Surety § 321 (1951), page 784. In addition, as noted in 42 C.J.S. Indemnity § 39 (1944), page 633:

"Where a deposit of money or valuables is made to indemnify the person with whom they are deposited against a possible loss or liability, the indemnitee is entitled to hold such deposit until it is ascertained that he will be subjected to no such loss or liability, or until he receives some other indemnity, although he may release such security at his pleasure; \* \* \*"

█ We believe the primary issue for consideration, the resolution being determinative of this appeal, is whether the appellee had received, in accordance with the

requirement of the collateral security agreement, "written evidence satisfactory to Surety of its discharge from all liability under such bonds". "Since a surety's liability is measured by the terms of his contract, his liability will be measured by the conditions stated in the bond." 72 C.J.S. Principal and Surety § 94 (1951), page 574. See also 72 C.J.S. Principal and Surety § 117 (1951).

▪ The language of the Collateral Security Receipt and Agreement clearly indicates that before the appellee could have been compelled to return the collateral security, all liability of the surety under the bonds must have been discharged and that such fact must be shown by written evidence satisfactory to the surety. However, the surety must have acted in good faith and its exercise of discretion as to what constituted satisfactory evidence of its discharge from all liability must have been reasonable. 72 C.J.S. Principal and Surety § 315 (1951).

The order of June 25, 1958, for substitution of a real property bond and exoneration of appellee's bond, was not an appealable order under any provision of A.R.S. § 12–2101. However, the order could have been reviewed if subsequently there were an appeal from the final judgment in the shareholders' action and such order were assigned as error. A.R.S. § 12–2102, subsec. A. Thus, it would be uncertain whether the surety bond had been exonerated and the surety discharged of all liability if in the appeal from the judgment dismissing the shareholders' action the trial court's exercise of discretion in granting the motion to substitute the real property bond for the surety bond were assigned as error. This is particularly so since the shareholders resisted such substitution.

Our Supreme Court has reversd orders which it considered abuses of the trial court's discretion. Bowman v. Hall, 83 Ariz. 56, 316 P.2d 484 (1957); Evans v. Hallas, 64 Ariz. 142, 167 P.2d 94 (1946). Furthermore, on appeal a judgment or order may be reversed or modified, or such judgment or order may be rendered as the court below should have rendered, or the action may be remanded to the court below with directions to render such judgment or order, or a new trial or other proceeding may be directed. A.R.S. § 12–2103, subsec. A. Thus, it is possible that if any of these orders were rendered in the shareholders' action appeal, the surety bond and the surety's liability thereunder would be reinstated and the condition precedent to the surety's duty to return the collateral would not have occurred.

▪ It should further be noted that "(t)he surety is not relieved of liability because he relied on information from the principal and was thereby induced to refrain from protecting himself, even though such information was fraudulent, unless the creditor was a party to the fraud." 72 C.J. S. Principal and Surety § 196 (1951), page 664. Thus, the appellee surety, upon notification from the appellants that an appeal had not been perfected within the required time in the shareholders' class or representative action, was entitled to exercise care and not required to rely solely on the information supplied by the appellant prior to returning the collateral. The same principle would apply to the alleged discharge of the surety's liability by court order since "(i)n the case of statutory bonds in judicial proceedings, the court cannot, unless a statute provides otherwise, or unless with the consent of the parties interested, discharge the bond or release the surety." 72 C.J.S. Principal and Surety § 120 (1951), page 599. None of these facts exist in this case.

▪ In accordance with the foregoing, we cannot conclude that the appellee surety acted in bad faith or exercised an unreasonable discretion.

The collateral security agreement exonerated the surety from liability for any loss or depreciation of the collateral security unless caused by the surety's gross negligence. Since we hold that the surety did not fail to fulfill its obligation to return the collateral, there is no need for us to consider the questions of gross negligence

nor of the parties' obligation to mitigate damages.

Judgment affirmed.

HATHAWAY and MOLLOY, JJ., concur.

NOTE: This cause was decided by the Judges of Division Two, as authorized by A.R.S. § 12–120, subsec. E.