442 P.2d 547

James **HILBURN** and Cleo Hilburn, dba
Hilburn Firestone, Appellants,

**v.**

**GENERAL ELECTRIC CREDIT CORPO-
RATION, Appellee.**

**No. 2 CA–CIV 501.**

Court of Appeals of Arizona.

June 18, 1968.

Knez & Glatz, by Nick Knez, Tucson, for appellants.

Stuart Herzog, Tucson, for appellee.

MOLLOY, Judge.

This litigation arises out of a contract between a retail appliance dealer and a finance company. Under the contract, the appliance dealer transferred conditional sales contracts to the finance company, receiving a certain percentage of the outstanding balance on the contract as a "purchase" price. The dealer was obligated to "repurchase" any account so transferred in the event of a

default by the buyer in the payment of any two installments on the conditional sales contract.

The finance company sued here to recover on twelve such accounts which were in default and it gained a summary judgment in the trial court as to nine of these accounts, after a concession that the dealer was relieved of liability on three of the accounts.

There was no dispute below or here as to the authenticity of the written contract between the parties nor as to the amounts owing on the various conditional sales contracts which are the subject of this litigation. On appeal, there are two attacks made upon the judgment rendered, and we find them both to be insufficient to require reversal.

The first attack is that the defendant-dealer had sufficiently alleged as an affirmative defense that the financing contract in question had been induced by "innocent misrepresentations." An examination of the defendants' answer discloses that the "misrepresentations" relied upon were that the finance company had agreed "as consideration" for the agreement:

" * * * to use due diligence in the collection of accounts assigned to it, to establish and maintain collection procedures to service said accounts so that said accounts would not become overly delinquent or the chattel securing said account would not be removed without its knowledge, and agreed to keep defendants informed concerning any account with which it was having difficulty in collecting installment payments."

In resisting the motion for summary judgment, the defendants filed an affidavit to the effect that they had been:

" * * * advised by the plaintiff, through its agents, officers, employees and/or nominees, that, upon his assigning of various sales contracts and accounts receivable of his customers to plaintiff, plaintiff would establish collection controls in the Sierra Vista area to collect the payments under the contracts so .as-

signed, to keep abreast of the persons whose accounts had been assigned and the security for such accounts, and represented to affiant that a field representative would be in the Sierra Vista area at least two times a week to follow up collections, and that eventually an office would be established by plaintiff in the Sierra Vista area on a full time basis."

The affidavit continues with the assertion that the defendants relied upon these representations in entering into the financing contract.

The financing contract consists of two form documents, both of which are signed by the defendants and accepted by the plaintiff-finance company. Among other provisions, there is one to the effect that:

"This agreement is in lieu of all contracts, or undertakings, either oral or written, heretofore or now existing between us, and neither of us shall be bound by anything not expressed herein, and no provision contained in this agreement shall be modified or altered except with your [finance company's] written approval."

The contract contains the following express provision which appears to be substantially inconsistent with the oral "misrepresentations" alleged in defendants' answer:

"In the event of default by the Buyer in the payment of any two instalments of an account or in the performance of any requirement imposed on the Buyer therein, we shall repurchase said account from you for cash, on demand, for an amount equal to the unpaid balance on said Account less such proper portion of your purchase charge as you may determine. *Our liability shall not be affected by any settlement, extension, forbearance or variation in terms which you may grant in connection with such Accounts, or by the discharge or the release of the obligation of the Buyer* or any other person by operation of law or otherwise. We do hereby expressly waive notice of acceptance of this agreement, *notices of non-payment*

**12**

*and non-performance, notices of amount of indebtedness outstanding at any time,* protests, demands and *prosecution of collection,* foreclosures and possessory remedies." (Emphasis ours)

 While it is true that a contract may be rescinded for material misrepresentations of fact which have been relied upon by the party seeking rescission, see Horne v. Timbanard, 6 Ariz.App. 518, 434 P.2d 520 (1967), and Restatement of Contracts § 476, the issue of factual misrepresentations has not been raised in this case. All of the "misrepresentations" alleged are promises of future conduct, and not assertions of fact. See Restatement of Contracts § 470.

Neither are there any allegations in this record of fraud by the making of promises with intent not to perform, see Caldwell v. Tilford, 90 Ariz. 202, 367 P.2d 239 (1961); and Restatement of Contracts § 473.

 The oral promises here made are not of the kind that would naturally be made as a separate agreement by parties situated as these parties were at the time of the written contract. See Jamison v. Southern States Life Insurance Company, 3 Ariz.App. 131, 412 P.2d 306 (1966); and Restatement of Contracts § 240. It is our view that the trial court properly ruled that, as a matter of substantive law, the written contract between the parties superseded the oral promises alleged. Brand v. Elledge, 101 Ariz. 352, 419 P.2d 531 (1966).

The next attack made upon the judgment is that the financing contract in question created the relationship of creditor-surety between the financing company and the dealer and that under the law of suretyship, the plaintiffs had the duty to use due diligence and care in the collection of the conditional sales contracts in question.

Whether the defendants assumed the position of a surety by reason of the subject financing contract is a question not adequately briefed to this court and as to which we have found no ready answer. The defendants rely upon the decision of D. W. Jaquays & Co. v. First Security Bank, 101 Ariz. 301, 419 P.2d 85 (1966), which dealt with an unconditional guaranty by the seller-assignor of a conditional sales contract to the bank to whom the conditional sales contract was assigned. This guaranty was regarded by our Supreme Court as being a surety contract.[1]

 If we assume that *Jaquays* determines that this is a surety contract, nevertheless we believe the contract must control, rather than the label placed upon the contract. The law seems to be clear:

"Suretyship obligations are contractual, and the important point of inquiry should be the precise undertaking of the surety and the duty of the principal. The recognition of the existence of different forms of contractual suretyship and the emphasis upon the obligation assumed in a particular case, are of greater significance than the distribution of labels to the various types of contracts."
Restatement of Security § 82, Comment g, at 232.

Accord, Cushman v. National Surety Corp. of New York, 4 Ariz.App. 24, 417 P.2d 537 (1966).

 The suretyship contract is to be construed under the same rules of construction as applicable to other contracts:

"The contract of a surety is interpreted according to the standards that govern the interpretation of contracts in general."
Restatement of Security § 88, at 252.

 Here, the express language of this contract negates the duty sought to be im-

---

1. That *Jaquays* presented a suretyship relationship seems very clear. The Restatement of Security § 82, Comment g, states:
 "The term 'guaranty' is used in this Restatement as a synonym for suretyship."

posed upon the finance company. We hold that the trial court rightfully enforced the contract according to its terms.

Judgment affirmed.

HATHAWAY, C. J., and KRUCKER, J., concur.