SHANNON R. GINN CONSTRUCTION COMPANY and Shannon R. Ginn, Plaintiffs,

v.

RELIANCE INSURANCE COMPANY, Defendant.

No. 98–8196–Civ.

United States District Court, S.D. Florida.

March 17, 1999.

Jon D. Derrevere, Derrevere & Associates, West Palm Beach, FL, for plaintiffs.

W. Frank Greenleaf, Welbaum, Guernsey, Hingston, Greenleaf & Gregory, Miami, FL, for defendant.

## ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

HURLEY, District Judge.

**THIS CAUSE** is before the court upon defendant Reliance Insurance Company's ("Reliance") motion for summary judgment. The main issue is whether section 624.155(1)(b)1, Florida Statutes (1997), authorizes a principal to sue a surety for bad faith. For the reasons set forth below, the court answers in the negative and, therefore, grants summary judgment.

On February 16, 1990, Shannon R. Ginn, as president of Shannon R. Ginn Construction Company, entered into a construction contract with Palm Beach County (the "County") to build the a stockade.[1] As required by Florida law, Ginn contemporaneously executed a performance bond with a surety insurer, defendant Reliance.[2] The performance bond required Reliance to fulfill Ginn's contractual obligations in the event of a default.[3] See Compl.Ex. A. Ginn paid a premium to Reliance to secure the performance bond, see Pls.' Resp. at 6; and, as is customary, Ginn executed an indemnity agreement, obligating it to reimburse Reliance for any expenses Reliance might incur due to claims against the bond. See Def.Mot. for Sum.Judg.Ex. B.

In August 1992, Ginn sued the County in state court, alleging anticipatory breach of

---

1. For the purpose of resolving this motion for summary judgment, a distinction between the two plaintiffs, Shannon R. Ginn and Shannon R. Ginn Construction Company, is unnecessary. The court, therefore, refers to the plaintiffs collectively as "Ginn."

2. Florida law requires entities that enter into a construction contract valued at greater than $100,000 with any county of the state execute a performance bond with a surety insurer. The bond must be conditioned on the contractor's performance of the contract requirements, including provisions for the payment of subcontractors. See § 255.05, Fla.Stat. (1997).

3. The performance bond, entitled "Contract Bond," listed Ginn as "Principal" or "Contractor," and Reliance as "Surety." See Compl.Ex. A. Although not a signatory, the County was the obligee or beneficiary of the performance bond. See id.

the construction contract. The County promptly notified Reliance in writing that it considered Ginn to be in breach of the contract and that it intended to terminate Ginn from the project as of September 17, 1992, if the alleged deficiencies were not corrected. Pursuant to the bond, the County requested Reliance, as surety, to arrange for completion of the project. At the same time, the County filed a counter-claim against Ginn and Reliance in the state action. The County terminated Ginn from the project on September 17, 1992. Reliance "tendered its defense" to Ginn with regard to the County's counterclaim against it, but took no steps to complete the construction project. The County independently hired a new contractor to finish the remaining work.

Almost three years later in May 1995, Ginn and the County settled the state case, resulting in Ginn receiving a total of $425,-000 from the County and its architect. On February 26, 1998, Ginn filed a two-count complaint against Reliance in state court, alleging that (1) Reliance failed in its duty to "attempt[ ] in good faith to settle claims when, under all the circumstances, it could and should have done so, had it acted fairly and honestly toward its insured and with due regard for her or his interests," in violation of section 624.155(1)(b)1, Florida Statutes (1997); and (2) Reliance engaged in unfair claim settlement practices, such as failing to investigate and act promptly on claims, as a general business practice, in violation of section 626.9541(1)(i)(3), Florida Statutes (1997). Based on diversity jurisdiction, Reliance removed the action to federal court.

Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c). "The purpose of summary judgment is to pierce the pleadings and to assess the proof in order to see whether there is a genuine need for trial." *Wouters v. Martin County, Fla.*, 9 F.3d

924, 928 (11th Cir.1993) (quoting *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986)). It is inappropriate at the summary judgment stage for the court to weigh the evidence and determine the truth of the matter. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). Rather, the court's function is to determine whether there exists an issue for trial. Where, as here, the non-moving party bears the burden of proof on an issue at trial, the moving party, in order to prevail, must do one of two things: show that the non-moving party has no evidence to support its case, or present "affirmative evidence demonstrating that the non-moving party will be unable to prove its case at trial." *United States v. Four Parcels of Real Property*, 941 F.2d 1428, 1437–38 (11th Cir.1991) (en banc). In order to determine whether the movant has met its burden, this court reviews the facts in the light most favorable to the non-movant and resolves all factual disputes in favor of the non-movant. *Smith v. Jefferson Pilot Life Ins. Co.*, 14 F.3d 562, 566 (11th Cir.1994). "If the movant successfully discharges its burden, the burden then shifts to the non-movant to establish, by going beyond the pleadings, that there exist genuine issues of material facts." *Hairston v. Gainesville Sun Publ'g Co.*, 9 F.3d 913, 918 (11th Cir.1993) (citing *Matsushita Electric Industrial Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586–87, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986)). "An issue of fact is genuine if the record as a whole could lead a rational trier of fact to find for the non-moving party. It is material if it might affect the outcome of the case under governing law." *Burke Co. v. Hilton Dev. Co.*, 802 F.Supp. 434, 436 (N.D.Fla.1992) (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986)). "[A] complete failure of proof concerning an essential element of the non-moving party's case necessarily renders all other facts immaterial." *Celotex*

*Corp. v. Catrett,* 477 U.S. 317, 322–23, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986).

### Suretyship

Suretyship involves three parties: a principal, a surety and an obligee. (In this case, Ginn is the principal, Reliance is the surety, and the County is the obligee.) Normally, the principal and the obligee have an underlying contract (here, the contract to construct the stockade). The surety agrees to perform the principal's obligations under the contract should the principal become unable to perform the obligations himself. *See* Richard S. Wisner & James A. Knox, Jr., *The ABCs of Contractors' Surety Bonds,* 82 Ill.B.J. 244, 244 (1994) (citing *Balboa Ins. Co. v. United States,* 775 F.2d 1158, 1160 (Fed.Cir.1985)). "[T]he core purpose of the suretyship agreement ... is to insulate the obligee from the risk of a default [by the principal]." *See Transamerica Premier Ins. Co. v. Brighton School Dist. 27J,* 940 P.2d 348, 353 (Colo.1997). In addition, the surety is entitled to indemnification by the principal for monies it expends in fulfilling the principal's obligations on the underlying contract. *See* Wisner & Knox, *supra,* at 244; *Western World Ins. Co. v. Travelers Indem. Co.,* 358 So.2d 602, 604 (Fla. 1st DCA 1978).

### Suretyship versus Insurance

Suretyship and insurance have similar characteristics and sometimes are discussed as related concepts; nonetheless, they are distinct. *See Western World,* 358 So.2d at 604 ("[T]he usual view, grounded in commercial practice, [is] that suretyship is not insurance.") (quoting *Pearlman v. Reliance Ins. Co.,* 371 U.S. 132, 140 n. 19, 83 S.Ct. 232, 9 L.Ed.2d 190 (1962)). The Indiana Supreme Court underscored this distinction when it said: "Insurance has been defined as a contract whereby one undertakes to indemnify another against loss, damage, or liability arising from an unknown or contingent event; whereas the

contract of suretyship is one to answer for the debt, default, or miscarriage of another." *Meyer v. Building & Realty Serv. Co.,* 209 Ind. 125, 196 N.E. 250, 253–54 (1935); *accord Airlines Reporting Corp. v. United States Fidelity and Guar. Co.,* 31 Cal.App.4th 1458, 37 Cal.Rptr.2d 563, 567 (1995). Another difference is that sureties are entitled to indemnification from their principals, while insurers are not. *See Western World Ins.,* 358 So.2d at 604 ("The surety, unlike the liability insurer, however, is entitled to be indemnified by the one who should have performed the obligation.").

Notwithstanding the above noted differences, many states, including Florida, categorize suretyship under the general heading of "insurance." *See, e.g., Financial Indem. Co. v. Steele & Sons, Inc.,* 403 So.2d 600, 602 (Fla. 4th DCA 1981) (applying Florida law); *Brighton School District,* 940 P.2d at 352 (Colorado includes sureties within its insurance code) *Dodge v. Fidelity and Deposit Co.,* 161 Ariz. 344, 778 P.2d 1240, 1241–42 (1989) (Arizona includes suretyship in its definition of insurance); *Windowmaster Corp. v. Morse/Diesel, Inc.,* 722 F.Supp. 1532 (N.D.Ill.1988) ("Under Illinois law, contracts of compensated suretyship are deemed to be contracts of insurance.").[4] Indeed, Florida defines "insurer" as "every person engaged as indemnitor, surety, or contractor in the business of entering into contracts of insurance or of annuity." § 624.03, Fla.Stat. (1997).[5] "Surety insurance" is defined, *inter alia,* as "[a] contract bond ... or a performance bond, which guarantees the execution of a contract." § 624.606, Fla.Stat. (1997). The inclusion of surety and surety insurance in its insurance code is strong evidence that Florida intended to hold surety insurers to the same standards as ordinary insurers.

### Bad Faith Actions in Florida

■ Under certain circumstances, Florida law permits both first-party and third-

---

**4.** At least one state has maintained a strong distinction between suretyship and insurance. *See Associated Indem. Corp. v. CAT Contracting, Inc.,* 964 S.W.2d 276, 282 (Tex.1998).

**5.** The Florida insurance code does not define "insured."

party actions for bad faith against insurers.[6] At common law, Florida allowed an injured third party to bring a bad faith action against the tort-feasor's insurer when the third party had obtained a judgment in excess of the tort-feasor's policy limits. *See Thompson v. Commercial Union Ins. Co.,* 250 So.2d 259 (Fla.1971). Third parties can also bring bad faith claims under section 624.155(1)(a), Florida Statutes (1997), and the statutes incorporated therein. *See Auto–Owners Ins. Co. v. Conquest,* 658 So.2d 928, 929 (Fla.1995); *see also State Farm Mut. Auto. Ins. Co. v. Laforet,* 658 So.2d 55, 63 (Fla.1995). First-party bad faith actions did not exist at common law in Florida, but are permitted by statute. *See Opperman v. Nationwide Mut. Fire Ins. Co.,* 515 So.2d 263, 265–66 (Fla. 5th DCA 1987) (section 624.155(1)(b)1, Florida Statutes, permits a first-party cause of action against insurers for bad faith refusal to settle). Recently, the Florida Supreme Court made clear that subsection (1)(b) of section 624.155 permits actions only by insureds, i.e., the person or entity to whom the insurer owes a duty. *See State Farm Fire & Cas. Co. v. Zebrowski,* 706 So.2d 275, 277 (Fla.1997) (insurer's "duty runs only to the insured").[7] The court reasoned that the "any person" language of section 624.155(1) must be read in conjunction with the insurer's duty to act "fairly and honestly *toward its insured,*" as stated in section 624.155(1)(b)1. *Id.* (emphasis added); *see also Conquest v. Auto–Owners Ins. Co.,* 637 So.2d 40, 42 (Fla. 2d DCA 1994), *approved,* 658 So.2d 928 (Fla.1995).

*Section 624.155(1)(b)1*

Ginn's first count alleges that Reliance failed to attempt in good faith to settle claims brought against Ginn by the County in violation of section 624.155(1)(b)1, Florida Statutes.[8] *See* Compl. ¶¶ 26, 27. Relying on the Florida Supreme Court's holding in *Zebrowski,* 706 So.2d at 277, both parties agree that only an *insured* can bring a bad faith action under section 624.155(1)(b)1. With this in mind, Reliance argues that summary judgment is appropriate because Ginn, as the principal in a surety agreement, is not an insured. Ginn, on the other hand, contends it is an insured because: (1) Ginn and Reliance are the only parties who signed the agreement, and (2) Ginn paid Reliance to issue the performance bond.

Although the court need not, and does not, decide the issue, one can make a strong argument that Florida treats sureties so much like ordinary insurers that sureties, in certain circumstances, may be liable for bad faith. As mentioned earlier, the Florida insurance code includes "surety" in its definition of "insurer." § 624.03, Fla.Stat. The Fourth District Court of Appeal relied on this section when it permitted one surety to recover attorney's fees from another surety under a statute that allowed such fees when a judgment was obtained against an "insurer." *See Financial Indem. Co. v. Steele & Sons, Inc.,* 403 So.2d 600, 602 (Fla. 4th DCA 1981).

The precise question in this case, however, is whether, under Florida law, a principal in a surety agreement is an "insured" within the meaning of section

---

**6.** A first-party action is a claim brought by an insured against her own insurer. *See Opperman v. Nationwide Mut. Fire Ins. Co.,* 515 So.2d 263, 264–65 (Fla. 5th DCA 1987) (insureds contending insurer refused in bad faith to settle their claim for underinsured motorist benefits under their policy). A third-party action is a claim by a non-insured against the insurer of another, often a tort-feasor. *See Conquest v. Auto–Owners Ins. Co.,* 637 So.2d 40, 41 (Fla. 2d DCA 1994), *approved,* 658 So.2d 928 (Fla.1995).

**7.** A third-party may bring a bad faith claim against an insurer under Section 624.155(1)(b)1 only if she first obtains a judgment in excess of the policy limits of the insured. *See State Farm Fire & Casualty Co. v. Zebrowski,* 706 So.2d 275, 277 (Fla.1997). Ginn does not assert that it has obtained an excess judgment against one of Reliance's insureds. On the contrary, Ginn contends that it is the insured under the surety agreement.

**8.** As a preliminary matter, Florida law controls this action because Ginn's claims arise, if at all, under two Florida statutes.

624.155(1)(b)1, Florida Statutes, thereby permitting an action for bad faith failure to settle claims on the performance bond. Ginn has not provided, and the court has not found, any Florida case directly on point.[9] The court, therefore, has examined Florida cases discussing the principles underlying bad faith actions against insurers and has sought to apply these principles to the case at bar.

The Florida Supreme Court predicated its holding in *Zebrowski*—that only insureds may bring bad faith claims—on the ground that insurers owe a duty of good faith to their insureds. 706 So.2d at 277. The special relationship between the insurer and the insured, the fact that the insured looks to the insurer for financial security and protection against calamity, is what gives rise to the tort of bad faith. Therefore, it is axiomatic that a bad faith action for failure to settle is appropriate only if there is, in fact, a duty to attempt to settle.

The question, then, is to whom does a surety owe a duty. The Colorado Supreme Court addressed this issue in *Transamerica Premier Ins. Co. v. Brighton School District*, 940 P.2d 348 (Colo. 1997). It compared the insurer/insured relationship to the surety/obligee relationship and concluded they were "nearly identical," stating "[w]hen an obligee requests that a principal obtain a commercial surety bond to guarantee the principal's performance, the obligee is essentially insuring itself from the potentially catastrophic losses that would result in the event the principal defaults on its original obligation." *Id.* at 352. Because the obligee looks to the surety for protection from calamity, the surety owes a duty of good faith to the obligee. Notably, in a suretyship, the principal does not look to the

surety for protection. Quite the opposite is true; the surety looks to the principal for indemnification. *See Airlines Reporting Co.*, 37 Cal.Rptr.2d at 567 ("[I]t is a third party (the obligee), not the principal, who is protected, although the principal pays the premium."); *Balboa Ins. Co. v. United States*, 775 F.2d 1158, 1160 (Fed. Cir.1985) (both the principal and surety are liable to the obligee). The Fourth District Court of Appeal of California observed that "it is not the duty of the surety to protect the principal as if the principal were the insured under an insurance policy. The surety's duty runs to the third party obligee." *Schmitt v. Insurance Co. of North America*, 230 Cal.App.3d 245, 281 Cal.Rptr. 261, 269 (1991). Thus, as Reliance contends, if any party has a claim for bad faith failure to settle under section 624.155(1)(b)1, Florida Statutes, it would be the County, the obligee under the performance bond.

Ginn relies on*Board of Dirs. of Ass'n of Apart. Owners v. United Pacific Ins. Co.*, 77 Hawai'i 358, 884 P.2d 1134, 1137 (1994), which itself relies on *Dodge v. Fidelity & Deposit Co.*, 161 Ariz. 344, 778 P.2d 1240, 1243 (1989), for the proposition that a surety owes a duty of good faith to both the obligee and the principal on a surety bond. While this statement offers some support for Ginn's position that the principal is the insured under a performance bond, its force is largely undercut by the fact that both cases involved bad faith claims brought by obligees, not principals. *See United Pacific*, 77 Hawai'i 358, 884 P.2d 1134; *Dodge*, 161 Ariz. 344, 778 P.2d 1240. The *Dodge* court expressly held "a surety has a duty to act in good faith in responding to its *obligee's* claims that the principal has defaulted." 778 P.2d at 1244 (emphasis added).[10]

9. In one case applying Florida law to a banker's surety bond, the Fifth Circuit labeled the principal under the bond, i.e., the bank, the "insured." *See First Nat'l Bank of Miami v. Insurance Co. of North America*, 535 F.2d 284, 286 (5th Cir.1976). Despite the nomenclature, the bond involved only two parties, the bank and the insurer. *See First Nat'l Bank of Miami v. Insurance Co. of North America* 495

F.2d 519 (5th Cir.1974) (first appellate decision). Thus, the relationship there was more akin to pure insurance rather than the tripartite relationship created by a surety agreement.

10. In *Dodge*, the Supreme Court of Arizona relied on an Arizona appellate opinion that held sureties must act in good faith toward

■ Based on the foregoing, the court holds that under the performance bond at issue, Ginn is not an "insured" and, therefore, cannot sue Reliance for bad faith under section 624.155(1)(b)1, Florida Statutes. Accordingly, summary judgment is appropriate on Count I.

### Section 626.9541(1)(i)

■ Ginn's second count alleges that Reliance engaged in unfair claim settlement practices in violation of section 626.9541(1)(i), Florida Statutes, by failing to investigate and act promptly on the County's claims that Ginn had breached the construction contract, causing substantial financial hardship to Ginn. Section 626.9541(1)(i) is broader than section 624.155(1)(b) in that it permits actions against insurers by both insureds and third parties.[11] *See Conquest,* 658 So.2d at 929 ("[T]he legislature has evidenced its desire that all persons be allowed to bring civil suit when they have been damaged by enumerated acts of the insurer."). To determine an insurer's liability for unfair claim settlement practices, Florida courts consider the totality of the circumstances, including:

1. the insurer's effort to resolve promptly the coverage issues or otherwise limit any potential prejudice to the insured;

2. the substance of the coverage disputes or the weight of the legal authority on the coverage issue; and

3. the insurer's diligence or thoroughness in investigating the facts specifically pertinent to coverage.

*John J. Jerue Truck Broker, Inc. v. Insurance Co. of North America,* 646 So.2d 780, 783 (Fla. 2d DCA 1994)·(relying on *Robinson v. State Farm Fire & Cas. Co.,* 583 So.2d 1063 (Fla. 5th DCA 1991)). To prevail, the plaintiff must establish that the insurer committed unfair acts "with such· frequency as to indicate a general business practice." § 626.9541(1)(i)(3), Fla.Stat.

Reliance does not dispute that a non-insured; third party like Ginn can bring a claim against it under this statute. Rather, Reliance challenges the sufficiency of Ginn's proof, arguing that Ginn has failed to offer competent evidence that Reliance engaged in unfair ·acts as a general business practice. As evidence of a general business practice, Ginn offers: (1) unsworn complaints from cases in other jurisdictions in which the plaintiffs contend Reliance acted in bad faith in denying their respective claims; and (2) an affidavit from an employee of the Florida Department of Insurance attesting to the fact that since 1993 eleven claims have been filed with the Florida Department of Insurance against Reliance and Reliance denied each claim and did not settle. ˙*See* Pla.'s Resp. at 11–12; Aff. of Jaime Payne. Because none of Ginn's submissions is reducible to admissible evidence at trial, summary judgment must be granted on Count II.

Florida law does not define the phrase "general business practice." Nonetheless, it seems clear that "general business practice" means more than acting in the proscribed manner in the plaintiff's own claim. *Cf. Howell–Demarest v. State Farm Mut. Auto. Ins. Co.,* 673 So.2d 526, 529 (Fla. 4th DCA 1996) (evidence of instant claim and three other reported cases against insurer insufficient to establish a general business practice for purposes of punitive damages under section 624.155(4), Florida Statutes); *Ticor Title Ins. Co. v. University Creek, Inc.,* 767 F.Supp. 1127, 1138 (M.D.Fla.

---

their principals. *See* 778 P.2d at 1243 (citing *Cushman v. Nat'l Sur. Corp.,* 4 Ariz.App. 24, 417 P.2d 537 (Ct.App.1966)). Such a holding made sense under the circumstances presented in *Cushman* because there the surety was retaining collateral belonging to the principal until the surety's liability was extinguished. *See Cushman,* 4 Ariz.App. 24, 417 P.2d 537. The court held the surety was required to exercise good faith in determining when its liability was discharged, as is consistent with the duty one who holds property of another owes to the property owner. *See id.* at 541.

**11.** A claim that an insurer has engaged in unfair claim settlement practices may be pursued through section 624.155(1)(a)1, Florida Statutes.

1991) (plaintiff's claim itself was not sufficient to state a claim for unfair claim settlement practices under Section 626.9541(1)(i)).[12] Thus, Ginn must present evidence of more than just its own claim that would permit a reasonable jury to conclude that Reliance engaged in unfair acts as a general business practice. *See id.*

 To survive summary judgment, the non-moving party must present admissible evidence or material that is reducible to admissible evidence. *See Celotex Corp.*, 477 U.S. at 327, 106 S.Ct. 2548; *Pritchard v. Southern Co. Serv.*, 92 F.3d 1130, 1135 (11th Cir.1996). Ginn has offered unsworn complaints from cases in other jurisdictions to show that other plaintiffs have alleged that Reliance conducts its claims practice unfairly. These complaints are nothing more than conclusory allegations, and as such, are inadmissible hearsay.[13] Just as Ginn's own complaint cannot be relied upon to overcome summary judgment, so too must the court disregard the mere complaints of others. *See Hairston,* 9 F.3d at 918 (non-moving party must go beyond the pleadings).

Ginn also offers an affidavit that supports the notion that Reliance denies claims and does not settle. *See* Aff. of Jamie Payne. Ginn does not offer any evidence as to whether these denials were inappropriate due to Reliance's failure to investigate or otherwise. The mere fact that claims have been denied is not relevant to whether Reliance has engaged in unfair claim settlement practices as a general business practice. *See Anderson,* 477 U.S. at 248, 106 S.Ct. 2505 ("Factual disputes that are irrelevant ... will not be counted.").

There being no competent evidence in the record to support Count II, other than evidence regarding Ginn's own claim, summary judgment is appropriate.

For the foregoing reasons, it is **ORDERED and ADJUDGED** that defendant Reliance Insurance Company's motion for summary judgment [DE # 37] is **GRANTED** on both counts. Final judgment will be entered by separate order.

---

**12.** The court is unsure and has found no authority on whether "general business practice" means the same under sections 624.155(4) (punitive damages) and 626.9541(1)(i)(3) (unfair claim settlement practices), Florida Statutes.

**13.** Occasionally, complaints are verified. Courts treat verified complaints as affidavits for purposes of summary judgment. *See United States v. Four Parcels of Real Property,* 941 F.2d 1428, 1444 n. 35 (11th Cir.1991) (en banc). In this case, however, the complaints from other actions submitted by Ginn were not verified.