778 P.2d 1240

David Elgin DODGE and Anneliese M. Dodge, husband and wife, Plaintiffs–Appellants,

v.

FIDELITY AND DEPOSIT COMPANY OF MARYLAND, Defendant–Appellee.

No. CV–86–0370–PR.

Supreme Court of Arizona, En Banc.

June 20, 1989.

Reconsideration Denied Sept. 19, 1989.

Jennings, Strouss & Salmon by Jefferson L. Lankford, Phoenix, for plaintiffs-appellants.

Snell & Wilmer by H. William Fox, James J. Osborne, Donald H. Smith, Phoenix, for defendant-appellee.

Harrison, Rollman & Gabroy, P.C. by W. James Harrison, Richard M. Rollman, Tucson, for amicus curiae, La Paloma Hotel Ltd. Partnership, Cottonwood Properties.

Jennings, Kepner & Haug by Curtis A. Jennings, William F. Haug, Mark R. Santana, Phoenix, for amicus curiae, U.S. Fidelity & Guar. Co., Hartford Acc. & Indem. Co., United Pacific Ins. Co., Reliance Ins. Co.

Kohn, Neff & Zirkle by Sidney Y. Kohn, Tucson, for amicus curiae, Centuras Inv. Co., Tucson Sav. & Loan Ass'n.

## OPINION

CORCORAN, Justice.

The question before this court is one of first impression in Arizona: Can a surety on a contractor's performance bond be liable for the tort of bad faith? We answer the question in the affirmative.

## FACTS

In March 1978, Mr. and Mrs. Dodge (plaintiffs) contracted with Homes & Son Construction Company, Inc. (Homes) to build a residence in Scottsdale, Arizona. The contract required Homes to obtain a performance bond in the face amount of the contract, $205,903. Fidelity and Deposit Company of Maryland (defendant), as surety, issued the bond, which provided:

> Whenever Contractor [Homes] shall be, and declared by Owner [plaintiffs] to be in default under the Contract, the Owner having performed Owner's obligations thereunder, the Surety [defendant] may promptly remedy the default, or shall promptly
>
> (1) Complete the Contract in accordance with its terms and conditions, or
>
> (2) Obtain a bid or bids for completing the Contract....

Plaintiffs claim that Homes failed to supply labor and materials to complete the project and correct defective workmanship and materials in accordance with the contract. Plaintiffs declared Homes in default and made demand upon defendant to remedy the default. Plaintiffs claim that defendant refused to investigate timely plaintiffs' claim or remedy the default.

Plaintiffs filed suit against Homes and defendant, alleging breach of contract. Pursuant to the construction contract, plaintiffs submitted the claim to arbitration. The arbitrator awarded plaintiffs $9,714, which included $5,000 retained by plaintiffs under the contract. Plaintiffs then filed an amended complaint asking the court to confirm the arbitrator's award and enter judgment in conformance therewith. The amended complaint also contained claims against defendant for breach of contract and bad faith.

Homes paid $4,714 into court to satisfy the judgment; the claim against it was then dismissed pursuant to a stipulation between Homes and plaintiffs. The trial court then granted defendant's motion to dismiss plaintiffs' bad faith claim.

After analyzing the tripartite relationship existing in suretyship contracts, the court of appeals affirmed the trial court's order, stating:

> [G]iven the difference in the relationship created by casualty insurance and surety insurance, we see no compelling public policy reasons to expand the damages collectible against a surety beyond those traditionally provided for breach of contract.

*Dodge v. Fidelity & Deposit Co.*, 161 Ariz. 340, 343, 778 P.2d 1236, 1239 (App.1986). We granted plaintiffs' petition for review. We have jurisdiction under Ariz. Const. art. 6, § 5(3) and A.R.S. § 12–120.24.

## DISCUSSION

In *Noble v. National American Life Ins. Co.*, 128 Ariz. 188, 624 P.2d 866 (1981), we recognized as a *tort* an insurer's bad faith refusal to pay a valid claim submitted by its insured. We stated:

> We have determined that it is reasonable to conclude that there is a legal duty implied in an insurance contract that the insurance company must act in good faith in dealing with its insured on a claim, and a violation of that duty of good faith is a tort.

128 Ariz. at 190, 624 P.2d at 868.

Plaintiffs' position is simple: sureties are insurers; insurers are subject to bad faith tort liability; therefore, sureties are subject to bad faith tort liability. The court of appeals rejected this syllogism as "too simplistic." *Dodge*, 161 Ariz. at 341, 778 P.2d at 1237. Although simple, this proposition is supported by our statutes, case law and sound policy reasons.

1. *Are sureties insurers?*

"Surety insurance" is included within the "Kinds of Insurance" listed in article 2 of A.R.S. title 20, ch. 2. Section 20–257(2)

includes within its definition of "surety insurance":

> Insurance guaranteeing the performance of contracts, other than insurance policies, and guaranteeing and executing bonds, undertakings and contracts of suretyship.

Additionally, A.R.S. § 20–106(B)(2) provides that "transaction of an insurance business in this state" includes:

> The making of or proposing to make, as guarantor or surety, any contract of guaranty or suretyship as a vocation and not merely incidental to any other legitimate business or activity of the guarantor or surety.

As defined by § 20–104, " 'Insurer' includes every person engaged in the business of making contracts of insurance." *See also* A.R.S. § 20–210 (setting minimum required capital for different kinds of insurance, including surety insurance); A.R.S. § 20–1532 (establishing venue of actions against surety insurers).

Our statutes thus make clear our legislature's intent to include sureties within the coverage of the insurance statutes. *See Watson v. Welton*, 115 Ariz. 76, 78, 563 P.2d 331, 333 (App.1977) ("A corporate surety ... is authorized to do business and regulated as a form of the insurance industry by Arizona through the Director of Insurance"); *Massachusetts Bonding & Ins. Co. v. Lentz*, 40 Ariz. 46, 50, 9 P.2d 408, 409 (1932) (legislature has approved court's holding that surety contracts are contracts of insurance "by classifying [corporate sureties] as insurance companies and subjecting them to regulation as such"). Although defendant and the court of appeals emphasized the differences inherent in surety insurance as compared with liability insurance, we agree with the language of the California Court of Appeal:

> We recognize liability insurance is not identical in every respect with suretyship. But we are not concerned with the differences between suretyship and liability insurance. We are concerned with whether the Legislature included suretyship among the classes of businesses it intended to regulate under the Insurance Code. It clearly did so.

*General Ins. Co. v. Mammoth Vista Owners Ass'n*, 174 Cal.App.3d 810, 824, 220 Cal.Rptr. 291, 298 (1985).

2. *Surety's duty to act in good faith.*

■ As insurers, sureties have the same duty to act in good faith that we recognized in *Noble* and *Rawlings v. Apodaca*, 151 Ariz. 149, 726 P.2d 565 (1986). In those cases, we identified the factors that create a "relationship in which the law implies special duties not imposed on other contractual relationships," and for which we would recognize a tort action for breach of those duties. *Rawlings*, 151 Ariz. at 158, 726 P.2d at 574. The two most important factors are (1) whether the plaintiff contracted for security or protection rather than for profit or commercial advantage, and (2) whether permitting tort damages will "provide a substantial deterrence against breach by the party who derives a commercial benefit from the relationship." *Rawlings*, 151 Ariz. at 159, 726 P.2d at 575.

■ The purpose of the construction performance bond required by plaintiffs' contract with Homes was not for plaintiffs' commercial advantage, but to protect plaintiffs from calamity—Homes' default on the contract. A contractor's default has the potential for creating great financial and personal hardship to a homeowner. Surety insurance is obtained with the hope of avoiding such hardships. Imposing tort damages on a surety who in bad faith refuses to pay a valid claim will deter such conduct. As the court stated in *Wallis v. Superior Court*, 160 Cal.App.3d 1109, 1117, 207 Cal.Rptr. 123, 128 (1984) (employee claim for bad faith breach of the implied covenant of good faith and fair dealing):

> In the first place, [contract damages] offer no motivation whatsoever for the insurer *not* to breach. If the only damages an insurer will have to pay upon a judgment of breach are the amounts that it would have owed under the policy plus interest, it has every interest in retaining the money, earning the higher rates of interest on the outside market, and hoping eventually to force the insured into a

settlement for less than the policy amount.

(Emphasis in original.) In *Noble* we noted that "[t]he whole purpose of insurance is defeated if an insurance company can refuse or fail, without justification, to pay a valid claim." 128 Ariz. at 190, 624 P.2d at 868. The same is true with construction performance bonds and other types of surety insurance. Permitting a surety to withhold performance of its obligations without reason would defeat the purpose for which surety insurance is intended.

Similar policy considerations were determinative in *Suver v. Personal Service Ins. Co.*, 11 Ohio St.3d 6, 462 N.E.2d 415 (1984), in which the court held the issuer of a financial responsibility bond liable for its deliberate refusal to pay its obligations arising from the bond. Although admitting that "a financial responsibility bond is not the same as an insurance policy," the court concluded:

> These differences are not so pronounced as to require the creation of a cause of action in one case and its denial in the other. Precisely the same policy arguments and rationale hold true in both settings. In both cases there is a great disparity of financial resources. Additionally, issuers of financial responsibility bonds are companies clearly affected with a public interest. Moreover, to insulate the issuer of a financial responsibility bond from liability for the deliberate refusal to pay its obligations arising from the bond is to encourage the routine denial of payment of claims for as long as possible. This court should not provide an incentive to act in bad faith.

11 Ohio St.3d at 7–8, 462 N.E.2d at 417.

Defendant does not dispute that a surety owes a duty to the obligee on a performance bond. However, defendant contends that a surety agreement requires the surety to divide its loyalty between the principal and the obligee. For example, a surety may lose its right to reimbursement from the principal if the surety knowingly prejudices any defenses the principal may have against the obligee. *See Restatement of Security* § 108(5) (1941).

We do not dispute that a surety has an enforceable obligation of good faith toward its principal. *See Cushman v. National Surety Corp.*, 4 Ariz.App. 24, 417 P.2d 537 (1966). However, the duty imposed on a surety to deal in good faith with its obligee does not require it to act in bad faith with its principal.

Elaborating on the basis for an insurer's liability in *Rawlings*, we stated:

> To be liable for tort damages, [the insurer] need only to have intended its act or omission, lacking a founded belief that such conduct was permitted by the policy.
>
> The founded belief is absent when the insurer either knows that its position is groundless or when it fails to undertake an investigation adequate to determine whether its position is tenable.

151 Ariz. at 160, 726 P.2d at 576. So long as a surety acts reasonably in response to a claim made by its obligee, the surety does not risk bad faith tort liability. *Cf. Noble*, 128 Ariz. at 190, 624 P.2d at 868 ("The tort of bad faith arises when the insurance company intentionally denies, fails to process or pay a claim *without a reasonable basis for such action*") (emphasis added). As one commentator has written, noting the "appositional duties" of a surety:

> [T]he surety often finds it difficult to decide whether to accede to the demands of the claimant [obligee] or abide by the position desired by the principal. Notwithstanding this difficulty, the surety is in a position of having accepted a premium in exchange for its promise to pay or perform in case of specified events.... Additionally, it makes its promise with full knowledge that at times it will possibly be called upon to perform when it can do so only at some risk of losing its recovery rights against or inviting suits from its [principal]. Given the nature of a corporate surety's business, and its knowledge of the inherent risk it entails, it can have no real confidence that a "middle man" plea on its part ... will find a favorable reception with the court.

**348**

Brumley, *Duty of a Shielded Surety to Investigate,* 17 Forum 266, 280 (1981).

3. *Defendant's motion to dismiss.*

■ In *Noble,* we quoted language from the Wisconsin Supreme Court concerning the sufficiency of a claim of bad faith:

> The tort of bad faith can be alleged only if the facts pleaded would, on the basis of an objective standard, show the absence of a reasonable basis for denying the claim, i.e., would a reasonable insurer under the circumstances have denied or delayed payment of the claim under the facts and circumstances.

128 Ariz. at 190, 624 P.2d at 868, quoting *Anderson v. Continental Ins. Co.,* 85 Wis.2d 675, 692, 271 N.W.2d 368, 377 (1978). Plaintiffs in our case alleged that defendant breached its duty of good faith and fair dealing by refusing even to investigate plaintiffs' claim, "even though Defendant ... knew or had reason to know that defaults existed under the construction agreement." This allegation states a claim sufficient to withstand defendant's motion to dismiss. The trial court erred by granting the motion.

## CONCLUSION

■ We hold that a surety has a duty to act in good faith in responding to its obligee's claims that the principal has defaulted. Breach of this duty entitles the obligee to maintain a tort action and recover tort damages. We vacate the court of appeals' opinion and reverse the superior court's dismissal of plaintiffs' claim. We remand this case to the superior court for proceedings consistent with this opinion.

## ATTORNEYS' FEES

■ In *Sparks v. Republic Nat'l Life Ins. Co.,* 132 Ariz. 529, 544, 647 P.2d 1127, 1152 (1982), we held that "an action alleging insurer's bad faith is one 'arising out of a contract' within the meaning of § 12–341.01." Because we reverse the trial court's grant of summary judgment, plaintiffs are the "successful parties" on this appeal under A.R.S. § 12–341.01(A). *See Wagenseller v. Scottsdale Memorial*

*Hosp.,* 147 Ariz. 370, 393–94, 710 P.2d 1025, 1048–49 (1985) ("successful party" on appeal includes party who achieves reversal of an unfavorable interim order when order is central to the case and issue of law decided on appeal is "sufficiently significant that the appeal may be considered as a separate unit"). Accordingly, we grant plaintiffs' request for attorneys' fees under A.R.S. § 12–341.01(A), in an amount to be determined upon their compliance with rule 21(c), Arizona Rules of Civil Appellate Procedure.

GORDON, C.J., FELDMAN, V.C.J., and CAMERON and MOELLER, JJ., concur.