Kevin B. DURANT and Anne N. Durant, Appellants,

v.

CHANGING, INC., an Oklahoma corporation d/b/a Consignment Asset Liquidation Center of America, Inc.; Tim Studebaker and Jerry Meek, Defendants,

and

Albright Title and Trust Company, an Oklahoma Corporation, Appellee.

No. 82476.

Court of Appeals of Oklahoma, Division No. 4.

Jan. 31, 1995.

As Corrected Feb. 13, 1995.

---

**630**

Ted J. Nelson, Joyce and Pollard, Tulsa, for appellants.

Jack De McCarty, Ross, McCarty, Rigdon & Ross, Newkirk, for appellee.

## OPINION

GOODMAN, Presiding Judge.

This appeal is from an order granting a surety's motion for summary judgment in an action to recover for alleged breach of the surety's obligations under a surety bond issued by the surety to protect the public from fraudulent acts of a bonded used automobile dealer. After a review of the record and applicable law, we reverse the judgment and remand for further proceedings.

### I

The material facts are undisputed. In 1992, Changing, Inc., an Oklahoma corporation, was operating as a used motor vehicle dealer doing business as Consignment Asset Liquidation Center of America, Inc. (CALCOA). Albright Title and Trust Company issued a statutorily required $10,000 "Used Motor Vehicle Dealer's Surety Bond" naming CALCOA as principal. *See* 47 O.S.Supp.1993 § 583(E)(1).[1]

On September 9, 1992, plaintiff Kevin B. Durant entered an "Exclusive Consignment Agreement" with CALCOA, whereby CALCOA agreed to sell Durant's automobile for an agreed-upon amount, less CALCOA's commission and listing fee.

The car was sold in early October 1992, but Durant was repeatedly rebuffed in his subsequent attempts to obtain the $5,051.88 balance due from CALCOA. On October 26, 1992, Durant and his wife joined as plaintiffs in an action alleging breach of contract, fraud, negligence, and conversion by Chang-

ing, Inc. d/b/a CALCOA, its president, agent, and employee.

On November 2, 1992, the plaintiffs made written demand upon surety Albright for the balance due from CALCOA and enclosed a copy of their petition. The demand deadline, November 12, passed without any response from Albright.

Then, on February 8, 1993, the plaintiffs sought leave to amend their petition to include Albright as a party defendant. The motion was granted February 10, and Albright was served with summons on February 17.

Albright answered February 26, and moved to dismiss the plaintiffs' action on the ground that on February 11, a federal court plaintiff had obtained an $11,000 default judgment in a similar action naming Albright as defendant surety for CALCOA. Albright said it had paid the entire amount of the $10,000 bond to the federal plaintiff on February 23, 1993, so "nothing remains to indemnify" the Durants. Albright later moved for summary judgment on the same set of facts.

The plaintiffs objected and moved for summary judgment alleging that their November written demand had created an equitable lien against the bond and, even though the bond fund had been exhausted, they were "nevertheless entitled to maintain an action against Albright for breach of the bond."

Albright responded saying that "*notice* of a claim is not a *perfection* of a claim" and that the federal judgment "*perfected* a claim to the bond before the plaintiff [*sic*] *assertion* of a claim" in the state court action. Thus, said Albright, its "obligation ... to pay the proceeds of its bond does not arise until a determination by a court of competent jurisdiction that the principal ... has practiced fraud ... or violated the provisions of the Used Motor Vehicle and Parts Dealers Act."

The trial court initially denied both parties' motions for judgment. But on August 13, 1993, the court granted Albright's "motion to

---

1. Section 583(E)(1) states that "[e]ach applicant for a used motor vehicle dealer's license shall procure and file with the Commission a good and sufficient bond in the amount of Ten Thousand Dollars ($10,000.00)."

dismiss" noting that "all other matters in plaintiff's [*sic*] amended petition still at issue." The plaintiffs' motion to certify the judgment pursuant to 12 O.S.1991 § 1006 (now 12 O.S.Supp.1993 § 994 eff. October 1, 1993), was granted, the certified judgment was filed September 28, 1993, and the plaintiffs timely filed this appeal.

## II

■ We are presented with a pure question of law, namely whether a surety with actual notice of competing federal and state court *claims* of fraud against its principal, has breached the terms of the statutorily required indemnity bond when it paid the full amount of its bond liability to the first claimant to secure a *judgment*. The plaintiffs contend that Albright should have interplead the proceeds of the bond into court and its willful failure to do so subjects Albright to liability in excess of the amount of the bond. We agree.

■ Generally, a surety is liable only to the extent of his undertaking under the terms of the bond. 15 O.S.1991 § 373; *Eager v. Seeds*, 21 Okla. 524, 96 P. 646 (1908). A surety on a statutory bond, however, is liable in accordance with the provisions of the statute. *Lum v. Lee Way Motor Freight, Inc.*, 757 P.2d 810 (Okla.1987). And a statutory bond must be construed and enforced in accordance with the purposes of the statute creating the obligation. *W.S. Dickey Clay Mfg. Co. v. New York Casualty Co.*, 174 Okla. 281, 50 P.2d 325 (1935). In "interpreting the terms of a contract of suretyship, the same rules are to be observed as in the case of other contracts," 15 O.S.1991 § 374, and in construing the obligations of a surety, "all such obligations shall be liberally construed in accordance with the rules of the general law applicable to policies of insurance." 18 O.S.1991 § 483.

■ The purpose of the indemnity bond required for used motor vehicle dealer licensees is to protect the public and ensure that the dealer "shall not practice fraud, make any fraudulent representation, or violate any of the provisions" of the Used Motor Vehicle and Parts Dealers Act, 47 O.S.1991 and

Supp.1994 §§ 581 through 587. The terms of the bond issued by Albright state that CALCOA and Albright "are held and firmly bound to the State of Oklahoma and severally to such persons who shall conduct business with [CALCOA] ... in the penal sum of Ten Thousand Dollars ($10,000.00), for the payment of which ... we hereby jointly and severally bind ourselves...." Because the principal and surety are jointly and severally liable to the public, the plaintiffs were entitled to file their action naming either the principal, or the surety, or both, at their option. *Yaffe v. Bank of Chelsea*, 271 P.2d 365 (Okla.1954).

The bond does not require notice of alleged misconduct committed by the principal, but it is undisputed that Surety Albright had *actual notice* that the plaintiffs and a third party had been victimized by the fraudulent acts of CALCOA, and that they had filed competing claims to recover the proceeds of the statutorily required indemnity bond.

■ Interpleader is a statutory tool which "provides that a party potentially exposed to double or multiple liability for wrongful payment may tender the claimed property into court for a decision on the priority of the claims." *Shebester v. Triple Crown Insurers*, 826 P.2d 603, 611 (Okla.1992). *See* 12 O.S. 1991 § 2022. Albright correctly contends that interpleader is permissive, and therefore it cannot be compelled to "incur the addition [*sic*] expense of costs and attorney fees ... to assert a claim of interpleader." The following provision of § 2022(C), however, relieves a prospective party of that burden:

> Where the party seeking relief by way of interpleader claims no interest in the subject of the action and the subject of the action has been deposited with the court ... the court should discharge him from the action and from liability as to the claims of the other parties to the action *with costs and, in the discretion of the court, a reasonable attorney fee.*

■ Inasmuch as the intent of the statutory bond at issue is to protect the public from fraudulent acts by used vehicle dealers, we hold that a surety with actual notice of competing claims to the proceeds of a

§ 583(E)(1) bond, who exhausts the bond proceeds by electing to pay one of two or more competing claimants does so at its own risk. *See Shebester v. Triple Crown Insurers*, 826 P.2d at 610. Such an election by the surety is a violation of the legislative intent of the bond statute, constitutes a breach of the surety's undertaking, and subjects the surety to liability beyond the terms of the bond to the extent of "the amount wrongfully paid." *Id.* The trial court thus erred as a matter of law in granting summary judgment to the surety.

■ Where a bond is given to protect individual members of the public who deal with the principal, and claims are asserted against the surety in excess of the penalty on the bond, the total penalty should be prorated among the claimants. *Western Surety Co. v. Childers*, 372 P.2d 214 (Okla.1962) (overruled on other grounds by *Barbero v. Equitable Gen. Ins. Co.*, 607 P.2d 670, 673 (Okla. 1980)). In the matter before us, the plaintiffs and the third party asserted claims totalling $16,051.88 against the $10,000 statutory bond. We hold that the surety's liability for the "amount wrongfully paid" is the pro rata share of the $10,000 statutory bond to which the plaintiffs would have been entitled

had the bond proceeds been interplead— $3,147.22.

We further hold that the plaintiffs are entitled to prejudgment interest pursuant to 23 O.S.1991 §§ 21 and 22. *See Southern Surety Co. v. Enfield*, 103 Okla. 116, 120, 229 P. 446, 449–50 (1924).

The summary judgment in favor of Albright is reversed and the matter is remanded with directions to grant the plaintiffs' motion for summary judgment, enter judgment in favor of the plaintiffs against defendant Albright for the prorated amount of the damages sustained by the plaintiffs as a result of the principal's fraud—$3,147.22—and determine the amount of prejudgment interest to which the plaintiffs are entitled.

REVERSED AND REMANDED FOR FURTHER PROCEEDINGS.

RAPP, V.C.J., and STUBBLEFIELD, J., concur.