2005 OK CIV APP 16

**WORLDLOGICS CORPORATION,**
**Plaintiff/Appellee,**

v.

**CHATHAM REINSURANCE CORPORA-**
**TION, and Mapfre Reinsurance Cor-**
**poration, Defendants/Appellants.**

No. 98,634.

Court of Civil Appeals of Oklahoma,
Division No. 2.

June 1, 2004.

Certiorari Denied Nov. 29, 2005.

Thomas J. McGeady, Donna L. Smith, Logan & Lowry, LLP, Vinita, OK, for Plaintiff/Appellee.

Evan B. Gatewood, Hayes, Magrini & Gatewood, Oklahoma City, OK, for Defendants/Appellants.

TOM COLBERT, Chief Judge.

¶ 1 Chatham Reinsurance Corporation appeals from the district court's judgment on a jury verdict in favor of Worldlogics Corporation on its tort claim for bad faith refusal to timely investigate and pay on a performance bond. The single issue on appeal is one of law—whether Chatham[1] owed a duty of

---

1. Judgment was entered against both Chatham Reinsurance Corporation and Mapfre Reinsur-

good faith and fair dealing to Worldlogics, the obligee on the bond. We conclude that it did and that the district court correctly refused to grant Chatham judgment as a matter of law. We, therefore, affirm the judgment based on the jury's verdict.

## FACTS AND PROCEDURAL BACKGROUND

¶ 2 Worldlogics hired Crown Construction to build a commercial building. As part of their contract, Worldlogics required Crown to obtain a performance bond for $582,722. Crown obtained the bond from Chatham, but Worldlogics paid $14,000 for the bond and was named in the document as the obligee. The bond, by its terms, did not require a declaration of default or termination of the underlying construction contract.

¶ 3 Crown's performance under the construction contract was unsatisfactory.[2] After negotiating unsuccessfully with Crown, Worldlogics contacted Chatham in September 1997 and demanded that it take over the construction and complete the project. Chatham refused to do so. Its investigation of Worldlogics' claim consisted of reviewing the correspondence between Worldlogics and Crown, discussing Worldlogics' allegations with Crown's owner, and speaking with both parties' attorneys. Despite numerous requests to do so, Chatham sent no one to inspect the building site until some months after Worldlogics' first claim.

¶ 4 On January 20, 1998, Worldlogics filed suit against Crown and Chatham, alleging that Crown had breached the construction contract and that Chatham was liable as the surety on the performance bond. The matter was referred to binding arbitration, pursuant to the construction contract's terms. The arbitrators awarded Worldlogics $496,139.81 (less $63,291 retained by Worldlogics) against Crown on the construction contract and against Chatham on the performance bond. The arbitration award was entered on August 14, 2000, but Chatham did not satisfy the award from the bond until March 23, 2001.

¶ 5 Worldlogics filed an amended petition with the district court, informing it of the arbitration award and alleging that Chatham had breached its implied duty of good faith and fair dealing in failing to perform a reasonable investigation and in unreasonably denying Worldlogics' claims. At that point, Worldlogics' bad faith claim against Chatham was the only issue remaining in the litigation.

¶ 6 Chatham filed a motion for summary judgment, arguing that it owed no duty of good faith and fair dealing to Worldlogics. Its motion for summary judgment was denied, and the matter proceeded to trial. At the close of Worldlogics' evidence, Chatham moved for a directed verdict, again arguing it owed no duty of good faith and fair dealing to Worldlogics. The court denied its motion and Chatham presented its evidence. After the close of all evidence, Chatham again moved for judgment as a matter of law and was again denied. The jury found in Worldlogics' favor and awarded damages of $180,000. The court entered judgment on the jury's verdict and Chatham appeals.

## DISCUSSION

¶ 7 Chatham raises a single issue on appeal: whether a contract surety has a duty of good faith and fair dealing to its obligee. Although the parties argue the facts in an effort to bolster their arguments, the issue presented is one of law, which we review *de novo*. *K & H Well Serv., Inc. v. Tcina, Inc.*, 2002 OK 62, ¶ 9, 51 P.3d 1219, 1223. If there is a duty and the breach of that duty gives rise to a potential tort claim, the district court did not err in denying Chatham's motions for judgment as a matter of law. We conclude that the court did not err.

¶ 8 Our analysis consists of two parts. The first is whether Chatham owed a duty of

---

ance Corporation and both are appellants here. Mapfre was added as a party because it acquired Chatham during the course of the litigation. However, the parties, their attorneys, and the trial court all consistently referred to Chatham only and we adopt their usage here.

2. Ultimately, Crown's "engineering" work on the building was deemed by the Oklahoma State Board of Registration for Professional Engineers and Land Surveyors to "constitute a health, welfare and safety concern" to the occupants.

good faith and fair dealing to Worldlogics, the obligee on the surety bond. If it did, the second is whether a breach of that duty gives rise to a claim for breach of contract only or a tort claim for bad faith.

■■■ ¶ 9 The first question is easily answered. "Every contract in Oklahoma contains an implied duty of good faith and fair dealing." *Wathor v. Mut. Assurance Adm'rs, Inc.,* 2004 OK 2, ¶ 5, 87 P.3d 559, 561. Worldlogics was a party to the performance bond, for which it paid, and the bond's express purpose was to protect it as the identified obligee. Thus, Worldlogics and Chatham had a contractual relationship that gave rise to a duty of good faith and fair dealing on Chatham's part.

■■■ ¶ 10 Although we have answered the first question and resolved the issue as actually posed by Chatham, we have not dealt with the real issue presented by the second part of our analysis: whether a breach of that duty can give rise to liability in tort—a claim of bad faith—in these circumstances. Under ordinary principles of contract law, a breach of the duty of good faith and fair dealing results only in damages for breach of contract, not liability for the tort of bad faith. *Wathor,* 2004 OK 2, ¶ 5, 87 P.3d at 561.

¶ 11 Both parties, however, agree that the tort of bad faith exists in insurance contracts. *Christian v. Am. Home Assurance Co.,* 1977 OK 141, 577 P.2d 899. "[A]n insurer has an implied duty to deal fairly and act in good faith with its insured and that the violation of this duty gives rise to an action in tort for which consequential and, in a proper case, punitive, damages may be sought." *Id.* at ¶ 25, 577 P.2d at 904. Worldlogics contends that the performance bond should be treated exactly as any other insurance contract so that a claim for bad faith can lie.

¶ 12 Chatham argues that the nature of a surety contract, like this performance bond, is fundamentally different from that of an insurance contract and that the surety contract should be treated as any other commercial contract, where a breach of the implied duty of good faith and fair dealing does not give rise to a tort claim. *See Wathor,* 2004

OK 2, ¶ 5, 87 P.3d at 561. Oklahoma law, however, has consistently held that the obligations of a surety should be construed under the laws applicable to other policies of insurance. *Durant v. Changing, Inc.,* 1995 OK CIV APP 20, ¶ 12, 891 P.2d 628, 631. Indeed, Oklahoma's Insurance Code includes a suretyship in its definition of "insurance policy or insurance contract." 36 O.S. Supp. 2003 § 1250.2(5); *see also* 36 O.S.2001 § 6103.2(C). The Code also provides that it is an unfair claim settlement practice for a surety to fail to promptly investigate a claim or not attempt "in good faith to effectuate prompt, fair and equitable settlement of claims submitted in which liability has become reasonably clear." 36 O.S.2001 § 1250.5(3)-(4).

¶ 13 Although Oklahoma's courts have not yet dealt with this precise issue, we are persuaded by the reasoning of the courts of other states which have applied the tort of bad faith to surety companies in similar contexts. In *Dodge v. Fidelity & Deposit Co. of Maryland,* 161 Ariz. 344, 778 P.2d 1240 (1989), the Supreme Court of Arizona recognized that a surety has the same duty to act in good faith as any other insurer. The two factors most important to its conclusion were: "(1) whether the plaintiff contracted for security or protection rather than for profit or commercial advantage, and (2) whether permitting tort damages will 'provide a substantial deterrence against breach by the party who derives a commercial benefit from the relationship.'" *Id.* at 1242 (quoting *Rawlings v. Apodaca,* 151 Ariz. 149, 726 P.2d 565, 575 (1986)). The Court went on to observe that, "[p]ermitting a surety to withhold performance of its obligations without reason would defeat the purpose for which surety insurance is intended." *Id.* at 1243.

¶ 14 By the standards set forth by the Arizona Court in *Dodge,* Chatham's duty of good faith and fair dealing supports Worldlogics' tort claim. Worldlogics did not require the performance bond to profit thereby, but only to protect itself in the event Crown failed to satisfactorily complete the building. Moreover, the possibility of damages in tort will provide a significant deterrence to surety companies in the future who

might be inclined to wait as long as possible to pay on a performance bond. In this instance, for example, a possible claim for breach of contract gave Chatham no incentive to act in a timely fashion on Worldlogics' demand since its contractual liability would be the same regardless of the time frame. The possibility of damages in tort, however, provides just the necessary incentive to respond in a timely fashion to the obligee.

¶ 15 Like Arizona, Colorado has also adopted the tort of bad faith in the surety context. In *Transamerica Premier Insurance Co. v. Brighton School District 27J*, 940 P.2d 348 (Colo.1997), its Supreme Court observed that parties to a surety contract do not remain on equal footing.

> Although the parties to a suretyship agreement are on equal footing in terms of bargaining power when they enter into the agreement, it is the commercial surety who controls the ultimate decision of whether to pay claims made by the obligee under the terms of the surety bond. For this reason, the commercial surety has a distinct advantage over the obligee in its ability to control performance under the secondary agreement. As with insurers, commercial sureties must proceed with the payment of claims made pursuant to a surety bond in good faith. Otherwise, the core purpose of the suretyship agreement, which is to insulate the obligee from the risk of a default, is defeated.

*Id.* at 352. We agree with this line of reasoning. In this case, Worldlogics attempted to protect itself from possible ruin by requiring its contractor to obtain a performance bond. Because Chatham had complete control over when it would honor the bond, however, Worldlogics was at a distinct disadvantage and lost all of the benefit it sought to gain by requiring the performance bond. A duty of good faith and fair dealing, reinforced by possible tort liability, levels the playing field.

■ ¶ 16 We are not persuaded by Chatham's argument that holding it to this duty towards Worldlogics, the obligee on the bond, necessarily compromises its duty towards Crown, the principal on the bond. A surety can act in good faith towards both parties; acting in good faith toward one party does not necessitate acting in bad faith toward the other. Chatham's duty toward Worldlogics did not require it to immediately pay on the bond the moment Worldlogics made its demand. It did, however, require a reasonable investigation and payment once liability became patently clear. *See Dodge*, 778 P.2d at 1243 ("So long as a surety acts reasonably in response to a claim made by its obligee, the surety does not risk bad faith tort liability."). The *Transamerica* court offered the following explanation:

> We recognize that the commercial surety is put in an awkward position in handling simultaneous claims made by the principal and the obligee. . . . Although the commercial surety's obligation may be more complex than those of an insurer, this complexity does not authorize a commercial surety to disregard its obligation to act in good faith.

*Transamerica*, 940 P.2d at 353 n. 4.

■ ¶ 17 Even if we were not persuaded by the Arizona and Colorado cases, Oklahoma law provides us with another basis to recognize the extension of this tort to surety companies. Even outside of the insurance context, "[w]hen the factual situation warrants, an action for a breach of contract may also give rise to a tort action for a breach of the implied covenant of good faith and fair dealing." *Beshara v. S. Nat'l Bank*, 1996 OK 90, ¶ 38, 928 P.2d 280, 291 (recognizing a bad faith claim against a bank by a depositor); *see also Conover v. Aetna U.S. Health Care, Inc.*, 320 F.3d 1076 (10th Cir.2003), *disapproval on other grounds recognized by Hollaway v. UNUM Life Ins. Co. of Am.*, 2003 OK 90, 89 P.3d 1022.

¶ 18 A surety has every motive to delay payment if its only potential liability is for the contract amount. Chatham had a significant financial stake in whether and when Worldlogics' claim was paid and benefitted by delaying payment as long as possible. This is precisely the situation addressed by the tort of bad faith:

> This statutory duty imposed upon insurance companies to pay claims immediately, recognizes that *a substantial part of the*

*right purchased by an insured is the right to receive the policy benefits promptly. Unwarranted delay precipitates the precise economic hardship the insured sought to avoid by purchase of the policy.*

*Christian,* 1977 OK 141, ¶ 21, 577 P.2d at 903 (emphasis added). Even a third party administrator can be held liable for bad faith denial of insurance benefits if it has "the power, the motive, [or] the opportunity to act unscrupulously." *Wathor,* 2004 OK 2, ¶ 13, 87 P.3d at 563. This same logic applies to surety bonds and this is not the first time a surety has been held liable for more than the face value of a surety bond. *See Durant,* 1995 OK CIV APP 20, ¶ 11, 891 P.2d at 631 (When a surety paid out the full amount of the bond on one claim, even though it knew of a pending, competing claim, it was required to satisfy the second claim, even though the total amount to be paid out exceeded the amount of the bond.).

### CONCLUSION

¶ 19 We are asked to determine whether, as a matter of law, a surety owes a duty of good faith and fair dealing to its obligee. We conclude that it does. We further conclude that a breach of that duty can give rise to a tort claim for bad faith based on the circumstances. The district court here did not err in denying judgment as a matter of law to the surety and in allowing the obligee's claim to proceed to the jury on its theory of bad faith failure to investigate and pay on a performance bond.

¶ 20 AFFIRMED.

REIF, P.J., and RAPP, J., concur.