IN THE

# ARIZONA COURT OF APPEALS
### DIVISION ONE

S&S PAVING AND CONSTRUCTION, INC., an Arizona corporation,
*Plaintiff/Appellant,*

*v.*

BERKLEY REGIONAL INSURANCE COMPANY, a Delaware
corporation, *Defendant/Appellee.*

No. 1 CA-CV 15-0239
FILED 5-12-2016

Appeal from the Superior Court in Maricopa County
No.  CV 2013-055438
The Honorable Michael D. Gordon, Judge

**AFFIRMED**

COUNSEL

Carmichael & Powell, P.C., Phoenix
By Trysta M. Puntenney, David J. Sandoval
*Counsel for Plaintiff/Appellant*

Jennings, Haug & Cunningham, LLP, Phoenix
By Chad L. Schexnayder, Robert John Lamb
*Counsel for Defendant/Appellee*

**OPINION**

Judge Margaret H. Downie delivered the opinion of the Court, in which
Presiding Judge Andrew W. Gould and Judge John C. Gemmill joined.

**D O W N I E**, Judge:

¶1        S&S Paving and Construction, Inc. ("S&S") appeals the dismissal of its bad faith claim against Berkley Regional Insurance Company ("Berkley"). We hold that a surety on a payment bond issued under Arizona's "Little Miller Act" may not be sued for bad faith and therefore affirm the judgment of the superior court.

## FACTS AND PROCEDURAL HISTORY

¶2        The City of Prescott retained Spire Engineering, LLC ("Spire") to act as general contractor for the Demerse Avenue Overlay Project ("the Project"). Berkley issued a payment bond for the Project. *See* Ariz. Rev. Stat. ("A.R.S.") § 34-222(A)(2) (requiring payment bonds for public projects).

¶3        In October 2011, S&S's attorney sent a demand letter to Berkley, stating that S&S had performed paving work for the Project pursuant to its subcontract with Spire and had not been paid $23,763. Berkley acknowledged the claim, requested additional information, and advised that its review of S&S's demand "does not toll the running of any statute of limitations or other time period."

¶4        S&S provided Berkley with the requested information, which included a proof of claim. Berkley acknowledged receipt of the documentation in December 2011 and stated that it needed to ascertain Spire's position regarding S&S's claim, after which it would communicate further. Berkley reiterated that its investigation of the claim "in no way waives or alters any rights, interests or defenses that we may have under our bond or applicable law." No further communication occurred between the parties until May 2013, when counsel for S&S sent another demand letter, and Berkley responded that S&S's claim was untimely.

¶5        In November 2013, S&S sued Berkley for breach of contract and bad faith.[1] Berkley moved for summary judgment on both claims. The superior court ruled that the breach of contract claim was barred by the statute of limitations. *See* A.R.S. § 34-223(B) (one-year statute of limitations for public work payment bonds). The court also dismissed

---

[1]        S&S also sued Spire for breach of contract, but the judgment at issue on appeal relates only to Berkley and includes a Rule 54(b) certification.

S&S's bad faith claim, concluding there was no "contractual relationship or special relationship for the claim to survive." The court denied S&S's motion for reconsideration and awarded Berkley attorneys' fees.

¶6        S&S timely appealed. We have jurisdiction pursuant to A.R.S. §§ 12-120.21(A)(1) and –2101(A)(1).

## DISCUSSION

¶7        We review a grant of summary judgment *de novo*. *Chalpin v. Snyder*, 220 Ariz. 413, 418, ¶ 17 (App. 2008). Summary judgment is appropriate if "there is no genuine dispute as to any material fact and the moving party is entitled to judgment as a matter of law." Ariz. R. Civ. P. 56(a). We will affirm the judgment if it is correct for any reason. *Ariz. Bd. of Regents v. State ex rel. Ariz. Pub. Safety Ret. Fund Manager*, 160 Ariz. 150, 154 (App. 1989).

¶8        In 1969, Arizona adopted the Little Miller Act, A.R.S. §§ 34-221, *et seq.* ("the Act"). *See SCA Constr. Supply v. Aetna Cas. & Sur. Co.*, 157 Ariz. 64, 65–66 (1988). Modeled after the federal Miller Act, 40 U.S.C. § 270a, *et seq.*, the Act requires contractors on public works projects to furnish payment bonds "for the protection of claimants supplying labor or materials to the contractor or his subcontractors." A.R.S. § 34-222(A)(2). A claimant who is not paid in full for labor or materials "shall have the right to sue on such payment bond." A.R.S. § 34-223(A). "The purpose behind both of the Miller Acts is to provide security for those who supply materials or labor in the construction of public projects." *SCA Constr.*, 157 Ariz. at 66. Such statutory protection is necessary because no lien rights exist on public projects. *See F.D. Rich Co. v. United States ex rel. Indus. Lumber Co.*, 417 U.S. 116, 122 (1974) (liens "cannot attach to Government property," so the Miller Act is intended "to provide an alternative remedy to protect" suppliers on public works projects).

¶9        S&S does not challenge the dismissal of its breach of contract claim on statute of limitations grounds. *See* A.R.S. § 34-223(B) (No suit "shall be commenced after the expiration of one year from the date on which the last of the labor was performed or materials were supplied by the person bringing . . . suit."). It instead contends the superior court erred by dismissing its bad faith claim because sureties issuing payment bonds under the Act have a duty to "undertake an investigation adequate to determine whether a claimant's claim is tenable or valid." According to S&S, sureties owe the same duty of good faith to claimants under the Act as insurance companies owe to insureds.

¶10            S&S asks us to graft a common law remedy onto a statutory scheme that includes within its ambit both the availability of complete relief and specific conditions precedent to recovery.  But "where a statute expressly provides a particular remedy or remedies, a court must be chary of reading others into it." *Transamerica Mortg. Advisors, Inc. v. Lewis*, 444 U.S. 11, 19 (1988); *see also State ex rel. Horne v. Autozone, Inc.*, 229 Ariz. 358, 362–63 (2012) (declining to read disgorgement remedy into statutory scheme "unless and until" the Arizona Legislature makes such a determination).

¶11            The Arizona Legislature has defined the breadth of liability under the Act.  Section 34-222(F) dictates the terms that payment bonds must include — one of which is the statement that "*all liabilities on this bond* shall be determined in accordance with the provisions, conditions and limitations of title 34, chapter 2, article 2, Arizona Revised Statutes, to the same extent as if they were copied at length in this agreement." (Emphasis added.)   "All liabilities" is a broad term.  Recognizing a common law bad faith remedy would be inconsistent with the legislature's defined liability for Act sureties.  And this Court has long-recognized that "[w]hen a corporate surety undertakes an obligation on a bond pursuant to a specific statutory requirement, its liabilities are measured by the terms of that statute." *Brown Wholesale Elec. Co. v. Merchs. Mut. Bonding Co.*, 148 Ariz. 90, 95 (App. 1984); *see also Norquip Rental Corp. v. Sky Steel Erectors, Inc.*, 175 Ariz. 199, 202 (App. 1993) ("The liability of a surety on a statutory bond, including who can make a claim on the bond and the required procedure for making such a claim, is measured by the terms of the statute requiring the bond.").

¶12            In addition to defining a surety's liability, the Act dictates the procedures that claimants must follow in order to recover against payment bonds.  *See R.E. Monks Constr. Co. v. Aetna Cas. & Sur. Co.*, 189 Ariz. 575, 579 (App. 1997) ("To recover against the payment bond, a claimant must comply with statutory procedures.").  When a statutory scheme "creates a right and also provides a complete and valid remedy for the right created, the remedy thereby given is exclusive." *Blankenbaker v. Jonovich*, 205 Ariz. 383, 387, ¶ 18 (2003).

¶13            But for its failure to timely file suit, S&S had a "complete and valid remedy" under the Act.  *See id.*  Because a payment bond is "sufficient to pay all claims, and is the sole source from which laborers and materialmen are to be paid, it necessarily follows that laborers and materialmen who do not timely avail themselves of this remedy fall into

the category of general creditors of the contractor." *Gen. Acrylics v. U.S. Fid. & Guar. Co.*, 128 Ariz. 50, 55 (App. 1980). Concluding that S&S is relegated to the status of general creditor and may not assert a bad faith claim against Berkley is consistent with the treatment of private project claimants under Arizona's mechanics' lien statutes. *Cf. Trio Forest Prod., Inc. v. FNF Constr., Inc.*, 182 Ariz. 1, 2 (App. 1994) (The Act is intended to "provide protection comparable to that afforded by state mechanic's lien laws on private contracts."). Mechanics' lien claimants are required to strictly comply with various statutory requirements, or lien-based recovery is barred. *See, e.g., Scottsdale Mem'l Health Sys. v. Clark*, 157 Ariz. 461, 470 (1988) (claim barred if no action initiated within six months of recording); *MLM Constr. Co. v. Pace Corp.*, 172 Ariz. 226, 232 (App. 1992) (failure to prove service of preliminary notice bars recovery); *James Weller, Inc. v. Hansen*, 21 Ariz. App. 217, 223 (1973) (requiring strict compliance with "statutory time elements in the recording of notices and claims").

¶14 S&S relies heavily on *Dodge v. Fidelity & Deposit Co. of Maryland*, 161 Ariz. 344 (1989) — a case we find distinguishable. In *Dodge*, the plaintiff-homeowners contracted with a residential contractor for the construction of a home. Their contract required a performance bond, which the defendant-surety provided. After the contractor failed to complete the project, the homeowners filed suit. As relevant here, they alleged bad faith against the surety. The surety prevailed in the superior court and on appeal to this Court. The Arizona Supreme Court reversed, however, holding that the bad faith claim could proceed, and stating:

> The purpose of the construction performance bond required by plaintiffs' contract with [the contractor] was not for plaintiffs' commercial advantage, but to protect plaintiffs from calamity—[the contractor's] default on the contract. A contractor's default has the potential for creating great financial and personal hardship to a homeowner. Surety insurance is obtained with the hope of avoiding such hardships. Imposing tort damages on a surety who in bad faith refuses to pay a valid claim will deter such conduct.

*Id*. at 346.

¶15 The most fundamental distinction between *Dodge* and this case is that the former did not involve a statute, let alone a carefully crafted statutory scheme that seeks to balance the competing interests inherent in public works projects. And unlike *Dodge*, where the court found that the surety lacked incentive to address the homeowners' claim,

a surety under the Act has a strong pecuniary motive to pay valid claims without litigation. Not only is a successful litigant under the Act entitled to recover "sums justly due," but an award of attorneys' fees is mandatory. *See* A.R.S. §§ 34-222(F), -223(A). Interest under the Prompt Pay Acts is also due prevailing claimants. *See* A.R.S. §§ 32-1129.02(H), 34-221(J).

¶16　　　Finally, S&S alleged that Berkley had a legal duty to "undertake an investigation adequate to determine" whether its claim was valid. But the Act neither imposes nor appears to contemplate any pre-litigation investigative or processing duties by sureties. *Cf. O'Connor v. Star Ins. Co.*, 83 P.3d 1, 6 (Alaska 2003) ("The statute nowhere states or implies that licensing bond sureties have a duty to independently investigate claims made against bonded contractors. The statutory language only requires that licensing bonds be conditioned on a promise to pay amounts adjudged against the contractor."). Indeed, the Act makes no mention of pre-litigation claims at all. An unpaid subcontractor's right is "to sue on such payment bond for the amount . . . unpaid at the time of institution of such suit and to prosecute such action to final judgment . . . ." A.R.S. § 34-223(A).

¶17　　　Although the Act is "a remedial statute that must be liberally construed to protect subcontractors providing labor and materials for a public construction project," courts may not disregard established limitations on liability and recovery. *See R.E. Monks*, 189 Ariz. at 576–77. Should the Arizona Legislature deem it appropriate to permit bad faith claims against Act sureties in addition to existing statutory remedies, it is free to enact legislation that effectuates that policy determination. *Cf. B.J. Cecil Trucking, Inc. v. Tiffany Constr. Co.*, 123 Ariz. 31, 34 (App. 1979) ("[L]imitations on liability under contractors' bonds have historically been governed by practical considerations relating to the nature of the business and the ability of the contractor to control his costs.").

## CONCLUSION

¶**18**      We affirm the judgment of the superior court. We deny S&S's request for an award of attorneys' fees on appeal because it has not prevailed. We will award Berkley a reasonable sum of attorneys' fees incurred on appeal pursuant to A.R.S. § 34-222(B), (F), as well as taxable costs, upon compliance with Arizona Rule of Civil Appellate Procedure 21.



**Ruth A. Willingham** · **Clerk of the Court**
F I L E D : ama