**FILED**
**United States Court of Appeals**
**Tenth Circuit**

**January 30, 2019**

**Elisabeth A. Shumaker**
**Clerk of Court**

**UNITED STATES COURT OF APPEALS**

**FOR THE TENTH CIRCUIT**
_____

HOPKINS AG SUPPLY LLC,

    Plaintiff - Appellant,

v.

BRUNSWICK COMPANIES, an Ohio
corporation,

    Defendant - Appellee,

and

FIRST MOUNTAIN BANCORP, a
Nevada corporation; GEORGE GOWEN,
an individual; THE UNDERWRITERS
GROUP INC, a Florida corporation;
TURHAN'S BAY EXPORT & IMPORT
CO, an Illinois corporation; TURHAN
EREL, LARRY WRIGHT, an individual;
PHENIX SERVICES, a Florida
corporation,

    Defendants.

No. 17-6251
(D.C. No. 5:12-CV-01141-C)
(W.D. Okla.)

_____

**ORDER AND JUDGMENT**[*]

_____

[*] After examining the briefs and appellate record, this panel has determined unanimously to honor the parties' request for a decision on the briefs without oral argument. *See* Fed. R. App. P. 34(f); 10th Cir. R. 34.1(G). The case is therefore submitted without oral argument. This order and judgment is not binding precedent, except under the doctrines of law of the case, res judicata, and collateral estoppel. It may be cited, however, for its persuasive value consistent with Fed. R. App. P. 32.1 and 10th Cir. R. 32.1.

Before **HARTZ**, **McKAY**, and **MORITZ**, Circuit Judges.

_____

Hopkins AG Supply LLC (Hopkins) appeals several orders entered by the district court in this diversity case concerning a surety bond for Hopkins' sale of wheat to be shipped to Turkey. We exercise jurisdiction under 28 U.S.C. § 1291 and affirm.

## I.    BACKGROUND

In 2012 Hopkins entered into a contract to sell Oklahoma-grown wheat to Turhan's Bay Export & Import Co. (Turhan's Bay) for the purchase price of $269,001.52. Hopkins required a bond to guarantee payment. Turhan's Bay hired defendant Brunswick Companies (Brunswick), a surety broker, to arrange for a bond to guarantee payment to Hopkins. Brunswick contacted defendant Larry Wright and his business entity Phenix Services (Phenix) to provide underwriting services for the payment guarantee. Mr. Wright selected defendant First Mountain Bancorp (FMB) as surety. FMB guaranteed payment of the funds due to Hopkins under the wheat contract up to $300,000.00. Turhan's Bay paid $15,000.00 to Brunswick for surety brokerage services. Brunswick retained a commission of $2,500.00, and transferred the balance to Mr. Wright for payment of a commission to Phenix and the premium for the payment bond to FMB.

Turhan's Bay paid only $25,000.00 on the wheat contract, leaving an unpaid balance of $244,001.52. FMB failed to pay the balance under the payment guarantee.

Hopkins filed suit against Brunswick; Mr. Wright; Phenix; FMB; FMB's principal, George Gowan; Turhan's Bay; and Turhan Erel, Turhan's Bay's owner.[1] The complaint alleged, among other things, breach of contract, negligence, and conspiracy to commit fraud. Turhan's Bay and Mr. Erel declared bankruptcy before trial. Default judgments were entered against FMB and Mr. Gowen.

The district court granted summary judgment against Hopkins on its breach-of-contract and negligence claims against Brunswick, Mr. Wright, and Phenix. The conspiracy claims against those defendants proceeded to a jury trial. At the close of Hopkins' case, the district court granted Brunswick's motion for judgment as a matter of law on the conspiracy claim. The jury then returned a verdict against Mr. Wright and Phenix for $244,001.52.

In separate criminal proceedings against him, Mr. Erel paid $117,800.00 to Hopkins pursuant to a restitution order. The district court reduced the judgment against Mr. Wright and Phenix by that amount.

Hopkins appeals the rulings entered in favor of Brunswick. Although Mr. Wright and Phenix filed a cross appeal, the cross appeal was dismissed for lack of prosecution. *See* Order, *Hopkins AG Supply LLC v. Wright*, No. 18-6001 (10th Cir. July 2, 2018). Mr. Wright and Phenix did not file a brief in this appeal.

---

[1] Also named as defendants were (1) Underwriters Group, Inc., which was one of Mr. Wright's entities that had shut down before he began doing business as Phenix; (2) Advance Trading, Inc.; and (3) Troy Rigel. Advance Trading and Mr. Rigel settled with Hopkins before trial.

## II. SUMMARY JUDGMENT

The district court granted summary judgment in Brunswick's favor on Hopkins' claims of breach of contract and negligence. "We review the district court's summary judgment decisions de novo." *Fox v. Transam Leasing, Inc.*, 839 F.3d 1209, 1213 (10th Cir. 2016). Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). We apply the substantive law of Oklahoma in this diversity case. *Burton v. R.J. Reynolds Tobacco Co.*, 397 F.3d 906, 914 (10th Cir. 2005).

### A. Breach of Contract

Hopkins asserts that it was the third-party beneficiary of a contract between Turhan's Bay and Brunswick. The district court concluded that any benefit to Hopkins from the Turhan's Bay-Brunswick agreement was an incidental benefit.

Under Oklahoma law, "[a] contract, made expressly for the benefit of a third person, may be enforced by him at any time before the parties thereto rescind it." Okla. Stat. tit. 15, § 29. "It is not necessary that third-party beneficiaries be specifically identified at the time of contracting, but it must appear that the contract was expressly made for the benefit of a class of persons to which the party seeking enforcement belongs. However, incidental benefit is insufficient." *Copeland v. Admiral Pest Control Co.*, 1996 OK CIV APP 119, 933 P.2d 937, 939 (citations omitted).

4

Hopkins maintains (1) Turhan's Bay contracted with Brunswick to obtain a legitimate performance guarantee ensuring Hopkins would be paid in full, (2) Brunswick was aware that Turhan's Bay's purpose in retaining Brunswick was to procure a payment guarantee, and (3) a payment guarantee was a condition precedent to Hopkins' sale of wheat to Turhan's Bay. Therefore, Hopkins claims there existed an unwritten contract between Turhan's Bay and Brunswick to benefit Hopkins.

Hopkins relies on Mr. Erel's trial testimony that he intended and believed the payment bond would pay Hopkins if Turhan's Bay defaulted on the wheat contract. Aplt. App. Vol. 4, at 63. Mr. Erel testified that he had faith in Brunswick "that this would be a decent bond and whoever issued it would step in and cover this." *Id.* But Brunswick was not a signatory to the guarantee of payment memorialized in a Commoditee Payment Guarantee executed by Turhan's Bay and FMB. *See id.* Vol. 2, at 108-09. The Commoditee Payment Guarantee specified that FMB guaranteed to pay $300,000.00 to Hopkins if Turhan's Bay defaulted on the wheat contract.

Hopkins also relies on the testimony of Mark Levinson, a senior vice president in Brunswick's surety department. Mr. Levinson testified that Turhan's Bay wanted to obtain a payment bond to ensure payment to Hopkins. *Id.* Vol. 4, at 165-66. This testimony does not establish that Turhan's Bay and Brunswick made a contract expressly for the benefit of Hopkins. Thus, we agree with the district court that the Turhan's Bay-Brunswick agreement provided Hopkins "an improved selling experience" by having Turhan's Bay employ a broker to locate a surety. *Id.* Vol. 3,

at 24. This was only an incidental benefit. The district court's grant of summary judgment on this claim is affirmed.

### B. Negligence

Hopkins alleged that Brunswick acted negligently in failing to investigate Mr. Wright and Phenix before engaging them to locate a surety for the wheat contract. Hopkins relies on *Worldlogics Corp. v. Chatham Reinsurance Corp.*, 2004 OK CIV APP 16, 108 P.3d 5. But *Worldlogics* held that "a surety owes a duty of good faith and fair dealing to its obligee, [and further] that a breach of that duty can give rise to a tort claim for bad faith." *Id.* at ¶ 19, 108 P.3d at 9. Here, FMB was the surety, not Brunswick, so *Worldlogics* does not impose a duty on Brunswick.

Hopkins' negligence claim is based on its position that it was a third-party beneficiary of the Turhan's Bay-Brunswick agreement. Our conclusion that Hopkins was not a third-party beneficiary dooms its negligence claim.

### III. DIRECTED VERDICT

Hopkins asserts that the district court erred in granting Brunswick's motion for a directed verdict at the close of Hopkins' evidence on its claim that Brunswick participated in a conspiracy to commit civil fraud. "A directed verdict is only appropriate if the evidence, viewed in the light most favorable to the nonmoving party, points but one way and is susceptible to no reasonable inferences supporting the non-moving party." *Youren v. Tintic Sch. Dist.*, 343 F.3d 1296, 1302 (10th Cir. 2003) (internal quotation marks omitted). "We review a district court's grant of a motion for directed verdict de novo." *Tanberg v. Sholtis*, 401 F.3d 1151, 1156

6

(10th Cir. 2005). Oklahoma substantive law controls the analysis of the conspiracy claim, but "federal law controls the ultimate procedural question of whether a directed verdict was warranted." *Youren*, 343 F.3d at 1302.

To establish its civil conspiracy claim, Hopkins was required to establish the following elements: "(1) two or more persons; (2) an object to be accomplished; (3) a meeting of minds on the object or course of action; (4) one or more unlawful, overt acts; and (5) damages as the proximate result." *Schovanec v. Archdiocese of Okla. City*, 2008 OK 70, ¶ 46, 188 P.3d 158, 175 (internal quotation marks omitted). "Actual fraud is the intentional misrepresentation or concealment of a material fact, with an intent to deceive, which substantially affects another person." *Croslin v. Enerlex, Inc.*, 2013 OK 34, ¶ 12, 308 P.3d 1041, 1045-46 (footnote omitted). In contrast, "constructive fraud is a breach of a legal or equitable duty to the detriment of another, which does not necessarily involve any moral guilt, intent to deceive, or actual dishonesty of purpose." *Id.* (footnote omitted).

Hopkins argues that evidence of prior lawsuits and judgments against Mr. Wright and FMB demonstrated Brunswick's intent to conspire and to commit fraud, as well as Brunswick's motive, knowledge, and methods for implementing the fraudulent scheme. Hopkins contends that the district court improperly excluded this evidence because the evidence would have demonstrated Brunswick's knowledge that Mr. Wright and FMB were not honest or reliable, thus proving civil fraud. Hopkins asserts that Brunswick (1) was "well aware" of Mr. Wright's and FMB's "history of issuing fraudulent performance and payment guarantees," Aplt. Opening Br. at 18,

7

(2) the evidence of past lawsuits "would have revealed that Brunswick knew that Wright and FMB were not honest or reliable bond brokers," *id.* at 18-19, and (3) during the time litigation was pending against Mr. Wright and FMB, Brunswick worked closely with them, *id.* at 20.

"Evidence of a crime, wrong, or other act is not admissible to prove a person's character in order to show that on a particular occasion the person acted in accordance with the character." Fed. R. Evid. 404(b)(1). But such evidence can be admitted for other purposes, "such as proving motive, opportunity, intent, preparation, plan, knowledge, identity, absence of mistake, or lack of accident." *Id.* 404(b)(2). "Evidence is properly admitted under Rule 404(b) if (1) it's admitted for a proper purpose, (2) it's relevant, (3) the probative value isn't substantially outweighed by the risk of unfair prejudice, and (4) the court provides a limiting instruction if so requested by the defendant." *United States v. Banks*, 884 F.3d 998, 1025 (10th Cir.), *cert. denied,* No. 17-9038, 2018 WL 2364734 (U.S. Dec. 10, 2018). "We review a trial court's exclusion of character evidence for abuse of discretion." *Tanberg*, 401 F.3d at 1167.

Hopkins cites to no evidence indicating that Brunswick was aware of any of the prior lawsuits and judgments against FSB, Mr. Wright, or Mr. Wright's business entities. Mr. Levinson testified that at the time FSB issued the payment bond, he was not aware of any claims against FSB, Mr. Wright, Phenix, or any of Mr. Wright's related entities for failure to honor payment or other bonds. Aplt. App. Vol. 4, at 214. Hopkins' evidence of past litigation does not demonstrate that Brunswick and

8

any other defendant had a meeting of minds to defraud Hopkins or that Brunswick committed any unlawful, overt act. Therefore, the district court did not abuse its discretion in ruling that the evidence of past wrongs demonstrating Mr. Wright's and FMB's character was not admissible to prove Mr. Wright or FMB "acted in accordance with the character," Fed. R. Evid. 404(b)(1).

Hopkins also contends that Brunswick's participation in the fraud was demonstrated by Mr. Levinson's testimony that although it is important to check a bonding company's history, he did not research Mr. Wright and, furthermore, the only information Mr. Levinson and Brunswick received about FSB was from Mr. Wright. In addition, Hopkins suggests that Brunswick should have been alerted to Mr. Wright's dishonesty and unreliability by Mr. Wright's history of dissolving his business entities and forming new ones for the same type of business. But Hopkins cites no authority requiring Brunswick to conduct an investigation, so Hopkins failed to establish actual or constructive fraud by Brunswick.

The district court correctly determined that there was no evidence of conspiracy or fraud by Brunswick. Based on our de novo review, we conclude that the evidence, viewed in the light most favorable to Hopkins, points but one way and is susceptible to no reasonable inferences supporting Hopkins. Therefore, we affirm the directed verdict.

## IV. JUDGMENT AMOUNT

Finally, Hopkins makes two challenges to the amount of the judgment entered against Mr. Wright and Phenix: (1) the verdict form limited the judgment to

9

$244,001.52 (the contract price of $269,001.52 less the $25,000.00 paid by Turhan's Bay); and (2) the district court reduced the judgment by $117,800.00, which was the restitution paid by Mr. Erel. Thus, the amended judgment against Mr. Wright and Phenix was for $126,201.52. The district court declined, however, to further reduce the judgment amount by a $48,500.00 settlement paid to Hopkins by defendants Advance Trading, Inc. and Troy Rigel.

On the first claim, Hopkins contends that limiting the jury's verdict was error because the payment bond required a $300,000.00 payment in the event of default, and "Hopkins incurred additional expenses," Aplt. Opening Br. at 23. Hopkins has not attempted to identify any additional expenses, and the record evidence on which it relies does not establish that Hopkins incurred additional expenses. *See id.* at 24 (citing Aplt. App. Vol. 4, at 129-30 (Hopkins' owner's testimony that he was able to meet his financial obligations despite not receiving full payment on the wheat contract)).

On the second claim, Hopkins argues that the district court erred in reducing the judgment amount by $117,800.00, the restitution paid by Mr. Erel pursuant to criminal proceedings against him. "[W]e review the propriety of [the] district court's set-off decision for abuse of discretion." *Driver Music Co. v. Comm'l Union Ins. Cos.*, 94 F.3d 1428, 1435 (10th Cir. 1996).

Hopkins relies on Okla. Stat tit. 12, § 832(C): "There is no right of contribution in favor of any tort-feasor who has intentionally caused or contributed to the injury . . . ." But Hopkins did not argue to the district court that the Erel

10

restitution was governed by this statute; Hopkins argued only that the Advance Trading/Rigel settlement was. *See* Aplt. App. Vol. 3, at 293-95. Thus, this argument is forfeited. *See Stender v. Archstone-Smith Operating Tr.*, 910 F.3d 1107, 1113 (10th Cir. 2018) (holding argument forfeited because parties "did not alert the district court to their current argument"); *Evanston Ins. Co. v. Law Office of Michael P. Medved, P.C.*, 890 F.3d 1195, 1202-03 (10th Cir. 2018) (holding that presentation of an argument in district court was insufficient to preserve a related, but distinct, argument made for the first time on appeal).

The district court applied Oklahoma's benefit-of-the-bargain measure of damages in fraud actions, which "allow[s] the plaintiff to recover the difference between the actual value received and the value the defrauded party would have had if it had been as represented," *LeFlore v. Reflections of Tulsa, Inc.*, 1985 OK 72, 708 P.2d 1068, 1077. After observing that the only proven damages were the contract price, the court determined that denying a set-off of the Erel restitution would result in a windfall for Hopkins. Therefore, the court reduced the judgment by the restitution amount. Based on our review of the record and the applicable law, we find no abuse of discretion in this ruling. *See Driver Music Co.*, 94 F.3d at 1436 (holding "[n]othing in reason or fairness" supported a windfall to plaintiff in the form of defendant's payment of plaintiff's mortgage; affirming set-off by the amount of the mortgage).

## V.    CONCLUSION

The district court's judgment is affirmed.

Entered for the Court

Monroe G. McKay
Circuit Judge